[No. B076439. Second Dist., Div. Two. May 19, 1994.]

APARTMENT ASSOCIATION OF GREATER LOS ANGELES et al., Plaintiffs and Respondents, v. SANTA MONICA RENT CONTROL BOARD, Defendant and Appellant.

## Counsel

Anthony A. Trendacosta and Ralph H. Goldsen for Defendant and Appellant.

Lawrence & Harding, Christopher M. Harding, Kenneth L. Kutcher and Kevin V. Kozal for Plaintiffs and Respondents.

## Opinion

**NOTT, J.**—In this case, we consider the facial validity of a Santa Monica Rent Control Board regulation which prohibits landlords who purchased rental property after the inception of rent control from seeking an adjustment in base rents. Appellant Santa Monica Rent Control Board (the Board) contends that the regulation draws a rational distinction between those who

purchased before and those who purchased after rent control, based on their differing investment-backed expectations. Respondents counter that landlords are constitutionally entitled to have base rents that are substantially below market adjusted to base date market levels.[1] While we do not accept respondent's position, we conclude that the regulation as written is constitutionally infirm. We therefore affirm the grant of summary judgment in favor of respondents.

## BACKGROUND

■ Rent control is a proper exercise of a city's police power if the regulation is "reasonably calculated to eliminate excessive rents and at the same time provide landlords with a just and reasonable return on their property." (*Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129, 165 [130 Cal.Rptr. 465, 550 P.2d 1001], hereinafter *Birkenfeld.*)

The stated purpose of the Santa Monica Rent Control Law (RCL) is to "regulate rentals so that rents will not be increased unreasonably and so that landlords will receive no more than a fair return." (RCL, § 1800.) To accomplish this purpose, the Board is directed to require landlords to justify any rents in excess of the base rent ceiling. (*Ibid.*)[2] The base rent ceiling is defined in section 1804, subdivision (b) as the rent that was in effect on the date one year prior to the adoption of rent control, that is, the rent in effect on April 10, 1978. Pursuant to section 1804, subdivision (b), landlords of controlled rental units are prohibited from charging rent in an amount greater than the base rent ceiling. In considering rent adjustments, the Board may adopt as its fair return standard "any lawful formula, including but not limited to one based on investment or net operating income." (RCL, § 1805, subd. (e).)

Board Regulation No. 4102 provides, "[I]t shall be presumed that the Net Operating Income produced by a property during the base year provided a fair return on property."[3] That presumption may be rebutted, as is pertinent here, by a showing that rent on the base date was disproportionate because the rent on the base date was substantially lower than at other times of the

---

[1]The complaint identifies the three respondents as follows: The Apartment Association of Greater Los Angeles is a nonprofit corporation of apartment owners with 27,000 members of whom approximately 2,000 own properties in Santa Monica. The Santa Monica Housing Council is also a nonprofit corporation comprised of Santa Monica rental property owners. Robert Sullivan is a Santa Monica resident.

[2]That requirement notwithstanding, RCL section 1805 empowers the Board to make a general adjustment of rent ceilings (subd. (a)), and to annually adjust rents in response to utility and tax increases or tax decreases, and for maintenance expense increases (subd. (b)).

[3]All regulation references are to the Board Regulations unless otherwise stated.

year due to seasonal demand or seasonal variations in rent, or because the rent on the base date was lower than other months due to rebates given for reasons unique to the unit or limited to the period determining the base rent. (Reg. No. 4103, subd. (b)(2) & (3).)

Like the rent control law at issue in this case, the Berkeley ordinance which was before the Supreme Court in *Birkenfeld* also had provisions for setting base rents and adjusting the rent ceilings. *Birkenfeld* noted that the Berkeley law was criticized because its list of relevant factors for consideration in reviewing petitions for rent adjustment "might have prevented the base rent from reflecting general market conditions such as a seasonal fluctuation in the demand for the kind of housing involved or the existence of a special relationship between landlord and tenant resulting in an undercharging of rent." (17 Cal.3d at p. 168.) *Birkenfeld* went on to hold that the Berkeley rent control law was constitutionally deficient because it "drastically and unnecessarily" restricted the rent control board's ability to adjust rents. "[A]n adjustment mechanism is constitutionally necessary to provide for changes in circumstances and also provide for the previously mentioned situations in which the base rent cannot reasonably be deemed to reflect general market conditions." (*Id.* at p. 169.)

That factual situation was presented in *Vega v. City of West Hollywood* (1990) 223 Cal.App.3d 1342 [273 Cal.Rptr. 243], review denied (hereinafter *Vega*). During the base year of the West Hollywood rent control ordinance, Mary Simonson's apartment house was inhabited, for the most part, by long-term, elderly tenants who were responsible for maintaining their units in exchange for low rents. For several of the units, the rent had not been increased for 15 to 20 years. Ms. Simonson's health began to fail, and she hired a manager for the property. At that point, she was in need of additional income for medical expenses and for increased property costs. A rent increase was sought. Ms. Simonson argued that she was entitled to an increase in the base date rent because her "historically low rents constituted 'peculiar circumstances,' within the meaning of the Ordinance." (223 Cal.App.3d at p. 1345.) She further argued that she was denied a " 'just and reasonable return' " within the meaning of the ordinance. (*Ibid.*) When her increase was denied, she sought a writ from the superior court, which remanded the matter to the rent control commission. The court ruled, among other things, that evidence of comparable rents was not to be treated as irrelevant by the commission.

Further procedural complications ensued, including the commission's adoption of a new regulation which established criteria for determining

whether rental units are comparable. The commission eventually determined that peculiar circumstances caused Ms. Simonson's base rents to be disproportionately low. (223 Cal.App.3d at p. 1347.) In fixing the increased rent, however, the commission rejected her evidence of comparable rents on the ground that the evidence was incomplete. The commission ruled that Ms. Simonson should have presented evidence of the actual expenses of buildings, the amount of return generated by other buildings, and the relationship of the expenses and return to Ms. Simonson's expenses and return. The commission proceeded to simply set a new base rent date, one which reflected the increased rents set by Ms. Simonson's manager. (*Ibid.*)

Following that ruling, the matter was brought on appeal. The *Vega* court stated the issue before it as follows: "[W]hether the City's Ordinance and the Commission's regulations provide for the establishment of base rents which reflect the requisite market conditions and which thus 'establish an effective mechanism to assure proper implementation of its policy decisions.' [Citation.]" (223 Cal.App.3d at p. 1349.)

*Vega* found that the West Hollywood ordinance lacked guidelines for determining how to adjust base date rents. The method chosen by the commission to make the determination, the court found, was "potentially unreasonably burdensome and costly" which could create " 'a substantially greater incidence and degree of delay than is practically necessary,' " a result condemned by *Birkenfeld*. (223 Cal.App.3d at p. 1350.) The court then quoted *Birkenfeld* (17 Cal.3d at p. 169) in its statement that the critical question is "whether the base date rents can 'reasonably be deemed to reflect general market conditions.' " (223 Cal.App.3d at p. 1351.)

Subsequent to the publication of *Vega*, the Board commissioners received a memo from staff recommending adoption of proposed Regulation No. 4005, subdivision (a)(8), to prohibit owners who purchased rental property after the adoption of rent control from seeking base rent adjustments.[4] The memo explained that *Vega* spawned an increase in the number of petitions from landlords seeking upward adjustments of base rents; that two such petitions were denied in part on the ground that the owners had purchased after rent control was adopted by the city on April 10, 1979; and that the denials were affirmed by the Board, which thereby adopted as a matter of policy that "post-rent control purchasers are not entitled to a *Vega* increase."

---

[4]Regulation No. 4005, subdivision (a)(8) provides: "(a) The Board shall not accept a petition for individual rent increase in any of the following circumstances: . . . (8) Where the individual increase petition is filed by a landlord who purchased the property subsequent to April 10, 1979, seeking an adjustment to the base rent due to a claim that the base rent did not reflect market conditions or a claim pursuant to subsection 4103(b) of these regulations."

The staff reasoned that *Vega* and *Birkenfeld* permit base rent adjustments upon a showing that the owner's situation led to the charging of rents that did not reflect market conditions. Those who purchased after 1979 were not involved in the decisions that led to the setting of rents in 1978. They bought properties that had a known schedule of regulated rents that could not be increased without permission. Moreover, debt service is not a factor in fair return calculations under Board Regulation No. 4101, subdivision (c)(2)(ii).[5] Therefore, the memo continued, since post-1979 purchasers negotiated price in a context that restricted them to the same percentage of net operating income obtained in 1978, those owners no doubt paid no more than the situation justified.[6]

In September 1992, the Board adopted Regulation No. 4005, subdivision (a)(8).

On October 8, 1992, respondents challenged the regulation by filing a complaint for declaratory and injunctive relief against the Board.

On April 8, 1993, the trial court granted respondents' summary judgment motion. The Board's motion for reconsideration was denied, and on May 28, 1993, judgment was granted, permanently enjoining the Board from enforcing Regulation No. 4005, subdivision (a)(8). The trial court concluded that the regulation "cannot be reconciled with the constitutional standard articulated in [*Birkenfeld*] and [*Vega*]."

### DISCUSSION

### 1. *There Is No General Constitutional Entitlement to Base Date Rents Adjusted to Market Levels*

■ Respondents maintain that *Birkenfeld* and *Vega* hold that owners of properties with base rents substantially below market rate are constitutionally entitled to have their base rents adjusted upward to base date market levels. That is a very broad reading of those cases. As stated in *Birkenfeld*, "Rent control enactments typically use the rent charged on a prior date as a starting point for the fixing of maximum rents on the theory that it approximates the rent that would be paid in an open market . . . . [Citations.]" (17 Cal.3d at p. 166; see *Vega, supra*, 223 Cal.App.3d 1342, 1349.) Though both opinions stated that the base date rents should reflect general market conditions, in both cases the landlord's entitlement to an increase in the base rent

---

[5]Regulation No. 4101 is entitled "Definitions." Subdivision (c)(2)(ii) states that operating expenses shall not include mortgage principal and interest.

[6]The memo emphasized that the proposed regulation, limited to purchasers, would not extend to owners who take title through gift or inheritance.

depended on the existence of circumstances that prevented the base rent from reflecting market conditions. The ordinance at issue in *Birkenfeld* did not provide for an increase on that ground, which was one of the reasons why the court held the ordinance was unconstitutional. The court suggested that the conditions for base date increase include seasonal fluctuation in demand, and a special relationship between the landlord and the tenant. *Vega* involved such a special relationship and an ordinance which provided (1) a presumption that the net operating income produced by the property during the base year provided a fair return, and (2) an opportunity to rebut the presumption by establishing, inter alia, that the rent on the base date was disproportionately low because it was not established in an arm's-length transaction or other peculiar circumstances. (223 Cal.App.3d at p. 1345 and fn. 1.) Neither case held that all landlords have the right to have their base rent adjusted merely by showing that the base rent was below market.[7] Respondents' position that "*Birkenfeld* and *Vega* establish a constitutional standard of general application to all historically low base rent properties without exception" is not supported by the opinions in those cases, and we hold that there is no general entitlement to an increase in base date rents predicated on market conditions.

Respondents contend that the regulation is based on an unconstitutional premise, i.e., that the Board may consider a landlord's fair return on investment in determining whether to adjust base date rents. They argue that *Birkenfeld* and *Vega* require that base rents be established on a market base rather than on an investment base. Respondents cite to language in both cases which seems to support their position. Once again, however, respondents are reading more into *Birkenfeld* and *Vega* than is warranted by the opinions. Moreover, respondents are ignoring other cases that address the issue of a landlord's fair return in a rent control context. The Constitution requires that rent control schemes provide landlords with a just and reasonable return on property. (*Birkenfeld, supra,* 17 Cal.3d at p. 165.) A fair return on the value of a landlord's property is not constitutionally mandated; fair return on investment is constitutionally valid. (*Fisher* v. *City of Berkeley* (1984) 37 Cal.3d 644, 686 [209 Cal.Rptr. 682, 693 P.2d 261] affirmed on another ground (1986) 475 U.S. 260 [89 L.Ed.2d 206, 106 S.Ct. 1045]; see also *Searle* v. *City of Berkeley Rent Stabilization Bd.* (1988) 197 Cal.App.3d 1251, 1256-1257 [243 Cal.Rptr. 449], review den.)

Respondents argue that Regulation No. 4005, subdivision (a)(8) discriminates against post-rent-control purchasers, implying that the RCL allows

---

[7]Indeed, the *Vega* opinion begins, "The issue in this case is how, *under a particular municipal rent control ordinance and peculiar circumstances,* rental rates must be determined." (223 Cal.App.3d at p. 1344, italics added.)

pre-rent-control owners to adjust their base date rents upward to base date market levels. That, however, would be a mischaracterization of the RCL. Pre-rent-control owners are given an opportunity to challenge in very limited ways the presumption that rents on a given date were providing the landlord with a just and reasonable return on their investment. As noted, the RCL regulates rents for the purpose of avoiding unreasonable increases while providing landlords with a fair return. Regulations Nos. 4100-4111 establish the "maintenance of net operating income" formula for determining whether a landlord is entitled to a rent increase. Those regulations have been found to establish "essentially a return on investment standard." (*Baker* v. *City of Santa Monica* (1986) 181 Cal.App.3d 972, 988 [226 Cal.Rptr. 755], review den.) The return on investment standard has survived facial challenges brought on constitutional grounds. (See, e.g., *Fisher* v. *City of Berkeley*, *supra*, 37 Cal.3d at pp. 679-682, and fn. 33, and p. 686; *Cotati Alliance for Better Housing* v. *City of Cotati* (1983) 148 Cal.App.3d 280, 287-296 [195 Cal.Rptr. 825].) We therefore find no basis for adopting respondents' position that Regulation No. 4005, subdivision (a)(8) is unconstitutional because its underlying premise is that landlords are entitled to fair return on investment.

### 2. *Because the Regulation Might Be Confiscatory in a Given Case, It Is Unenforceable*

█ The Board's position is that the adjustment mechanism of Regulation 4103 should be available only to those owners upon whom the regulatory scheme was initially imposed, whose reasonable expectations would have been violated had rents been frozen at levels not negotiated in an arms-length transaction. The Board contends that post-rent-control purchasers should not have an opportunity to rebut the fair return presumption of Regulation No. 4102 because those purchasers bought their properties well-aware of the existing controlled schedule of rents and the rent control program. The Board argues that if the post-rent-control buyers can have the base rent increased, they will be receiving a greater than expected return on their properties.

While we agree in general with the arguments presented by the Board, we are concerned that Regulation No. 4005, subdivision (a)(8) is too broad in that it does not allow any post-rent-control purchaser to petition for a base rent increase on any ground. Because this is a facial challenge to the regulation, respondents have not presented a factual scenario which would lead us to conclude that a post-rent-control owner would be entitled to a base rent adjustment. The Board's arguments focus on those post-rent-control

owners who will seek adjustments only on the basis of market levels. We have already held that there is no constitutional entitlement to have base rents reflect market conditions, and owners in Santa Monica have limited ways of challenging the presumption that rents on the base date were providing the landlord with a just and reasonable return on their investment. (Reg. No. 4103, subds. (b)(2), (3).) In light of that, there is no reason to preclude a post-rent-control owner in an unusual situation who might be entitled to a base rent increase under the RCL from seeking such an increase. Rent control regulations can have a confiscatory effect if no rent adjustment mechanism is provided, and a regulation may be invalid on its face when its terms will not permit those who administer it to avoid confiscatory results in its application to the complaining parties. (*Birkenfeld*, *supra*, 17 Cal.3d at pp. 165, 169.) We therefore hold that because Regulation No. 4005, subdivision (a)(8) could have unconstitutional results in particular cases, the trial court was correct in staying its enforcement.

## DISPOSITION

The summary judgment is affirmed. Respondents are awarded costs on appeal.

Boren, P. J., and Fukuto, J., concurred.

A petition for a rehearing was denied June 13, 1994, and respondents' petition for review by the Supreme Court was denied August 11, 1994. Baxter, J., was of the opinion that the petition should be granted.