[No. B186454. Second Dist., Div. Six. Feb. 22, 2007.]

STARDUST MOBILE ESTATES, LLC, Plaintiff and Appellant, v.
CITY OF SAN BUENAVENTURA et al., Defendants and Respondents.

1172

## Counsel

Hart, King & Coldren, Robert S. Coldren, C. William Dahlin and Mark D. Alpert for Plaintiff and Appellant.

Robert G. Boehm, City Attorney, Jim Neuerburg, Assistant City Attorney; Endeman, Lincoln, Turek & Heater, Henry E. Heater, Donald R. Lincoln and Linda B. Reich for Defendants and Respondents.

## Opinion

**COFFEE, J.**—Stardust Mobile Estates, LLC (Stardust), appeals from an order and judgment substantially denying its petition for writ of mandate concerning the application of the City of San Buenaventura (City) mobile-home rent control ordinance by the City Rent Review Board (Rent Board).[1] Stardust asserts that the trial court erred by: (1) upholding the Rent Board's use of a formula with a partial inflation index to determine the allowable rental increase; (2) upholding the Rent Board's denial of a base year rental adjustment; (3) dismissing Stardust's claims that the application of the rent control ordinance violated its constitutional right to be compensated for the taking of its property; and (4) denying Stardust procedural due process. With respect to the denial of a base year rental adjustment, we remand this case to the trial court to determine whether the Rent Board should reconsider the requested base year rental adjustment after providing Stardust the opportunity to make an offer of proof. In all other respects, we affirm the judgment.

### Factual and Procedural Background

In 1968, Stardust purchased Stardust Mobile Home Estates (Park). The 125-space Park is located in the City.

---

[1] When discussing their arguments to this court, City and Rent Board collectively will be called respondents.

■ In 1981, the City adopted ordinance No. 81-39 (Ordinance) establishing a mobilehome park rent stabilization system regulating space rents in mobilehome parks.[2] The Ordinance prohibits park owners from increasing the space rent when a tenant sells his mobilehome, absent "an agreement to the contrary." (§ 6.600.090, subd. (I)(2)(c).)

■ Subject to limited exceptions, the maximum annual increase that may be imposed on the base rent for any nonexempt space shall be equal to the lesser of the percentage change in the consumer price index (CPI) or 5 percent of the "current base rent." (§ 6.600.070, subd. (F)(1).) Park owners must apply for "allowable" or "discretionary" increases in order to impose larger increases on base rent. An "allowable increase" is determined by a specified formula considering several factors, including changes in certain kinds of costs. (§ 6.600.070, subds. (A), (B)(1)–(3).) The criteria for discretionary increases are described in "The Discretionary Increase Guidelines Mobile Home Park Rent Review Board City of San Buenaventura" (Guidelines) (Res. No. RRB 89-3). (§ 6.600.080, subd. (C).) The Guidelines contemplate that a park owner will use a "preferred method" that compares the park's 1980 base year net operating income (NOI), adjusted by 50 percent of the change in the CPI since the base year with the current year NOI. (Guidelines, §§ 3.01, 3.03, 3.05.) The Guidelines also provide that while the MNOI (Maintenance NOI) method is preferred rather than exclusive, it will be used "unless clear and convincing evidence is presented that another method is more appropriate." (Guidelines, § 1.05.)

A. *The Challenged Rent Review Proceedings*

1. *Stardust's Rent Increase Applications*

In July 2002, monthly space rents at the Park ranged from $337.31 to $426.71. On February 25, 2003, Stardust submitted a "discretionary" rent increase application and an "allowable" rent increase application. (The Guidelines require applicants for a discretionary increase to apply for an allowable increase.) Stardust submitted materials to support its applications, including reports prepared by "MAI appraiser and recognized mobile home park expert, John Neet."

In its allowable rent increase application, Stardust included capital expenditures of $16,466 for repair and replacement of resident driveways. Including those expenditures, Stardust requested allowable increases ranging from $9.95 to $12.19 per month per space.

---

[2] The Ordinance was amended several times and is now codified. All section references are to the City of San Buenaventura Municipal Code unless otherwise stated.

In requesting a discretionary rent increase, Stardust used two alternative methods to support an increase of either $300 or $50.50 per month. In seeking a $300 monthly discretionary increase, Stardust asserted that the application of rent control resulted in mobilehome owners receiving tens of thousands of dollars in "premiums" upon the sale of their homes, relying upon *Richardson v. City and County of Honolulu* (9th Cir. 1997) 124 F.3d 1150, certiorari denied (1998) 525 U.S. 871 [142 L.Ed.2d 137, 119 S. Ct. 168].

In seeking the $50.50 monthly discretionary increase, Stardust relied upon a modified MNOI approach in which it adjusted the base year NOI at 100 percent of the change in the CPI instead of using the MNOI (50 percent) preferred method. Stardust also contended that it was entitled to a *"Vega"* adjustment of $24 per month in the base year rent under *Vega v. City of West Hollywood* (1990) 223 Cal.App.3d 1342 [273 Cal.Rptr. 243] (*Vega*). Stardust provided the Rent Board with Neet's analysis, indicating that the space rents at the Park during the base year were approximately $24 per month below market.

### 2. The Rent Board's Staff Process

The Rent Board retained experts—"lawyer and urban planner Dr. Kenneth Baar" and appraiser James Brabant. Brabant reported that Stardust's rents were $15 per month per space below market in 1981. (While the parties below had disputed whether 1980 or 1981 was the base year, both parties relied on 1981 data because no comparable rent data was available for 1980.) Baar concluded that the requested $24 per month base year *"Vega* adjustments" were not warranted legally because they were not supported by the required "special circumstances."

Everette Garmon, the Rent Board administrator, prepared a staff report recommending the denial of the discretionary rent increase application, relying upon the reports of Baar and Brabant. The staff report acknowledged that rents were below market during the base year, but recommended against any *Vega* adjustment, relying on Baar's report. The staff report used the MNOI preferred method rather than the modified method proposed by Stardust (adjusting the base year NOI at 100 percent of the change in the CPI). Baar's analysis recognized that net income could erode without a 100 percent CPI adjustment, but concluded that the leveraged nature of real estate would compensate for any such erosion. The staff report recommended that the Rent Board deny recovery of $16,466 of capital expenditures for driveway improvements. Stardust submitted responses to the Baar and Brabant reports on May 12 and May 15, 2003.

B. *The Rent Board Hearing*

The Rent Board heard Stardust's rent increase applications on May 15, 2003. After hearing the allowable rent increase application, the Rent Board adopted a proposed resolution denying Stardust recovery of the cost of driveway improvements and approving allowable monthly space rental increases ranging from $9.23 to $9.70.

The Rent Board next heard the discretionary rent increase application. Donald Lincoln, of the Endeman, Lincoln, Turek & Heater law firm, presented an argument responding to the letter that Stardust's counsel had submitted to the Rent Board. Brabant testified that 1981 rents were $15, not $24, below comparable rents. Baar testified that the Park's rent increases since 1980 had substantially exceeded percentage increases in the CPI (rents had increased by 176 percent, while CPI had increased by 110 percent); the Park's NOI percentage increase since 1980 had exceeded CPI increases (NOI increased by 120 percent, CPI increased by 110 percent). Baar further testified that even with Stardust's claimed base rental adjustment of $24 per month per space, the growth in the Park's NOI exceeded that required under the Rent Board's MNOI standard. The Rent Board refused Stardust's request to cross-examine Baar and Brabant. Baar also testified that Stardust should not receive a base rental adjustment because the right to such an increase is based on a "judicial doctrine" and the courts "seem to be indicating that special circumstances [are] required" to obtain such an increase.

Stardust's expert, Neet, was unavailable for the hearing and did not testify because the Rent Board denied Stardust's requests to continue the hearing so that he could testify. Stardust called Park manager Jim MacKay as its only witness. MacKay testified that his mother, while she was owner, intentionally prevented rent increases prior to the adoption of rent control because she was "very emotionally attached" to the tenants, like an "interim relief society." MacKay also described a meeting during which a representative of the tax assessor's board had explained that the Park's property taxes would be increased based upon the level of market rents that could be charged, although Stardust's rents were lower than market rates. There was no objection to MacKay's testimony during the hearing and it was not rebutted by any other evidence.

On May 15, 2003, after the witnesses completed their testimony, the Rent Board adopted a resolution denying Stardust's discretionary rent increase application. (The resolution had been prepared before the hearing.)

C. *Judicial Proceedings*

Stardust initially filed suit in federal court making constitutional claims, including that the denial of its requested rent increase was a taking. (U.S.

Const., 5th & 14th Amends.) The federal court dismissed Stardust's claims, finding that some of the claims were untimely, and that Stardust's "failure to substantially advance" taking claim was not ripe because Stardust had not sought compensation through state proceedings.

On October 31, 2003, Stardust filed this state court action, stating two causes of action, and claiming to reserve its right to litigate its federal constitutional claims in federal court. In the first cause of action, a petition for writ of administrative mandamus, Stardust challenged the Rent Board's denial of rent increases. (Code Civ. Proc., § 1094.5.) In the second cause of action, a claim for declaratory relief, Stardust alleged that the Rent Board had violated its rights to procedural and substantive due process and caused a taking under the California Constitution. (Cal. Const., art. I, §§ 7, 15.)

The court overruled a demurrer and denied a motion to strike the taking cause of action. It bifurcated the writ petition and agreed to hear it before the taking cause of action, over the objection of Stardust. The court also denied many requests from Stardust for discovery relating to the taking claim.

The court conducted the hearing on the writ petition on January 31, 2005. Neither party presented evidence. After counsel presented argument, the court took the matter under submission. On April 6, 2005, the court issued a statement of intended decision. In that decision, the court ordered the Rent Board to grant a *Vega* adjustment to Stardust, noting that there was "no evidence at all, much less substantial evidence, to support the Board's finding that no adjustment at all was necessary." The City and Stardust filed objections to the statement and replied to each other's objections.

On August 11, 2005, the court issued a statement of decision denying most of the relief requested in the Stardust writ petition, with the exception of remanding the matter back to the Rent Board with directions to grant Stardust's allowable rent increase application based on driveway mainte-nance. Addressing the taking claim, the decision stated: "It is not the court's intention to give Petitioner short shrift on its . . . taking claim. [T]he *Lingle* [*Lingle v. Chevron U.S.A. Inc.* (2005) 544 U.S. 528 [161 L.Ed.2d 876, 125 S.Ct. 2074]] requirements are not present here. If Petitioner thinks otherwise, the arguments are best presented to a reviewing court. This court finds that *Lingle* is dispositive." On September 15, the court dismissed the taking claim in a judgment incorporating its earlier decision. Stardust filed its notice of appeal.

## DISCUSSION

### Introduction

Many California cities have adopted rent control regulations to address the unique attributes of mobilehome ownership and mobilehome park management. "[U]nlike the usual tenant, the mobilehome owner generally makes a substantial investment in the home and its appurtenances—typically a greater investment in his or her space than the mobilehome park owner." (*Galland v. City of Clovis* (2001) 24 Cal.4th 1003, 1009 [103 Cal.Rptr.2d 711, 16 P.3d 130] (*Galland*); see also *Yee v. Escondido* (1992) 503 U.S. 519, 523 [118 L.Ed.2d 153, 112 S.Ct. 1522].)

### Judicial Review of Administrative Decisions

When a party seeks judicial review of an administrative rent control decision by filing a petition for a writ of mandate in the superior court, "[t]he inquiry in such a case shall extend to the questions whether the respondent [agency] has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (Code Civ. Proc., § 1094.5, subd. (b).)

### Standard of Review on Appeal

"Denial of [Stardust's] petition for a writ of administrative mandamus is reviewed by using the substantial evidence test. (Code Civ. Proc., § 1094.5, subd. (c); [citation].) 'The substantial evidence test requires the court to begin with the presumption that the record contains evidence to sustain the board's findings of fact. [Citation.] The board's interpretation of an ordinance's implementation guidelines is given considerable deference and must be upheld absent evidence the interpretation lacks a reasonable foundation. [Citation.] The burden is on the appellant to prove the board's decision is neither reasonable nor lawful.' (*Carson Harbor Village, Ltd. v. City of Carson Mobilehome Park Rental Review Bd.* (1999) 70 Cal.App.4th 281, 287 [82 Cal.Rptr.2d 569].)" (*Los Altos El Granada Investors v. City of Capitola* (2006) 139 Cal.App.4th 629, 648 [43 Cal.Rptr.3d 434] (*Los Altos*).)

1

### The Trial Court Properly Upheld the Rent Board's Use of the Preferred MNOI Method in Determining the Rental Increase

Stardust argues that the trial court erred in upholding the Rent Board's decision to use the preferred MNOI method. We disagree.

■ The Guidelines presume that the NOI (gross income minus operating expenses) received in the 1980 base year provided the park owner with a just and reasonable return above the required minimum on his property, unless there is clear and convincing evidence to the contrary. (Guidelines, §§ 1.03, 3.01.) ■ The Guidelines are structured to permit continuation of a just and reasonable return on the owner's property above the required minimum by evaluating a discretionary rent increase request by the "preferred" MNOI method formula. The MNOI method permits an application for a discretionary rent increase to adjust the base year NOI by 50 percent of the increase in the CPI from the base year to the comparison year, the latest calendar year or the latest fiscal year used by the applicant for accounting purposes. Under the MNOI method, an applicant is entitled to a rent increase in the amount by which the sum of the applicant's base year NOI and the price level adjustment exceeds the applicant's comparison year NOI. A park owner may request a method other than the preferred method. However, unless clear and convincing evidence is presented by the park owner that another method is more appropriate, the Rent Board will use the preferred method. (Guidelines, § 1.05.)

■ The standards established by this method are similar to those approved in several cases. For example, in *Oceanside Mobilehome Park Owners' Assn. v. City of Oceanside* (1984) 157 Cal.App.3d 887, 903 [204 Cal.Rptr. 239], and *Rainbow Disposal Co. v. Escondido Mobilehome Rent Review Bd.* (1998) 64 Cal.App.4th 1159, 1172 [75 Cal.Rptr.2d 746], the courts approved 40 percent indexing. More recently, in *H.N. & Frances C. Berger Foundation v. City of Escondido* (2005) 127 Cal.App.4th 1, 15 [25 Cal.Rptr.3d 19] (*Berger*), the court held that an MNOI approach does not require 100 percent indexing. Stardust correctly notes that in *Fisher v. City of Berkeley* (1984) 37 Cal.3d 644, 683 [209 Cal.Rptr. 682, 693 P.2d 261], the court stated that the rental board was required to increase rents to account for inflation. *Fisher* did not, however, disapprove an index for inflation at less than 100 percent of the CPI percentage increase.

■ Stardust also argues that the Rent Board improperly relied upon Baar's leveraging argument to support adjusting its MNOI at less than 100 percent of the CPI because Stardust owns the Park "free and clear." We disagree. The *Berger* court rejected an equivalent argument recently, stating, "For purposes of determining a fair return, however, a rent control board may impute an investment to a landlord who acquires a park by gift or inheritance, for instance by using the transferor's investment with any necessary adjustments. [Citation.] [Park owner] has given no convincing rationale for treating leveraged owners differently from owners privileged to acquire property without incurring any debt." (*Berger, supra,* 127 Cal.App.4th at p. 15, fn. 10.)

■ There is no general constitutional entitlement to an increase in base date rents predicated on market conditions. (*Apartment Assn. of Greater L.A. v. Santa Monica Rent Control Bd.* (1994) 24 Cal.App.4th 1730, 1737 [30 Cal.Rptr.2d 228].) " 'Setting rent ceilings is essentially a legislative task, and *agencies, not courts, choose which administrative formula to apply.*' " (*Galland, supra,* 24 Cal.4th at p. 1022, italics added, quoting *Kavanau v. Santa Monica Rent Control Bd.* (1997) 16 Cal.4th 761, 784 [66 Cal.Rptr.2d 672, 941 P.2d 851] (*Kavanau*).) ■ Substantial evidence supports the Rent Board's decision to use 50 percent of the CPI increase in adjusting the rent and its conclusion that Stardust failed to present clear and convincing evidence why its modified MNOI (100 percent CPI) method was more appropriate than the preferred method.

2

*The Trial Court Should Allow Stardust to Make an Offer of
Proof Relating to the* Vega *Adjustment and Thereafter
Decide Whether the Rent Board Should Hear Further
Evidence Concerning the Requested* Vega *Adjustment*

■ Stardust contends that the trial court erred by upholding the Rent Board's refusal to provide a *Vega* adjustment, increasing base year rents. The base year rental adjustment is a necessary part of the constitutional constraints required for a valid form of rent control. (*Birkenfeld v. City of Berkeley* (1976) 17 Cal.3d 129, 165 [130 Cal.Rptr. 465, 550 P.2d 1001].) "[W]hen a rent control law establishes a 'base rent' by reference to rents on a specified date, the law should permit adjustments of that base rent for those rental units that had artificially low rents at that time." (*Kavanau, supra,* 16 Cal.4th at p. 772.) The question is whether the base date rents can reasonably be deemed to reflect general market conditions. (*Vega, supra,* 223 Cal.App.3d at p. 1351.) "[A] property owner must be permitted, pursuant to the principles discussed in *Birkenfeld* . . . , to start rent calculations with a base date rent similar to other comparable properties." (*Id.* at p. 1352.) The City's Guidelines recognize that the use of a base rent fixed by free market forces and

presumed to allow a just and reasonable return on park owners' property above the minimum is among the factors that "assure a just and reasonable return above the minimum to owners of mobile home park property subject to the Ordinance." (Guidelines, § 1.01.) Guidelines section 2.04 allows for a base year rental adjustment.

Stardust argues that under the Guidelines, "unique circumstances" are not required to adjust base rents. Respondents argue that Stardust waived this argument because it did not present it to the Rent Board, citing *NBS Imaging Systems, Inc. v. State Bd. of Control* (1997) 60 Cal.App.4th 328, 336–337 [70 Cal.Rptr.2d 237]. Stardust presented another closely related argument to the Rent Board, which it raises in its brief—base year rental adjustments are not limited to the "unique circumstances" of *Vega*. We address these arguments together.

Guidelines section 2.04 reads as follows: "Adjusted Income for Below Market Rentals is an amount representing the difference between the actual space rental collected and what the owner could have collected if the spaces had been rented at their full market value. *Examples of below market rents may be units occupied by the owner or the owner's family, . . . or any rental space where the rent increases permitted by the Ordinance No. 81-39 or regulations and guidelines adopted thereunder could have been made, but have not been made because of the landlord's rental policies or purposes not in accord with the intent or purpose of the Ordinance or guidelines as amended.*" (Italics added.)

Respondents argue that Guidelines section 2.04 "clearly embodies *Vega*'s special circumstances prong." Respondents, as well as Baar, who testified at the hearing, take the position that *Vega* adjustments can only be granted where the "unique circumstances" of *Vega* exist. We disagree with their interpretation. In *Vega, supra,* 223 Cal.App.3d 1342, 1351, the court required a showing of "unique circumstances" to support a base year rental adjustment where *the applicable rent control ordinance required* the landlord to show " 'peculiar circumstances' " to obtain a base year rental increase (*id.* at p. 1345, fn. 1, italics omitted). Here, in contrast, Guidelines section 2.04 contains no "unique" or "peculiar" circumstances requirement, although respondents argue that it embodies *Vega*'s "special circumstances prong."

According to its resolution, the Rent Board denied the *Vega* adjustment "[b]ecause no substantial evidence of extraordinary or special circumstances relating to the rent levels existing at Stardust in the 1980 base year has been presented, and because the Board's adopted Guidelines for discretionary rent increases expressly provide that a fair NOI is the base year NOI adjusted by 50% of the percentage increase in the CPI since the base year, the Board

finds no basis for a discretionary rent increase based on the *Vega* test." The resolution also refers to a statement from Baar's report that "there is no evidence of any extraordinary circumstances existing at the time the Ordinance was enacted and no such evidence was presented by the applicant *prior to the hearing on May 15.*" (Italics added.) Taken together, these statements indicate that the Rent Board based its rejection of the base year rent on Baar's opinion regarding the requirement for extraordinary (or special or unique) circumstances to justify a base year rental adjustment. The Rent Board did not refer to the requirements of its own Ordinance or Guidelines for a base year rental adjustment—"where the rent increases . . . could have been made, but have not been made because of the landlord's rental policies or purposes not in accord with the intent or purpose of the Ordinance or guidelines as amended." (Guidelines, § 2.04.) The stated intent of the Ordinance is to "protect the owners and occupiers of mobile homes from unreasonable rent increases, *while at the same time recognizing the need of park owners to receive a fair return on their property and rental income sufficient to cover increases in the costs . . . of operation.*" (§ 6.600.010, italics added.)

 In assessing a requested *Vega* adjustment, it is unreasonable for the agency or reviewing court to impose the "peculiar circumstances" requirement of the West Hollywood ordinance at issue in *Vega* rather than using the requirement of the applicable ordinance. In *Concord Communities v. City of Concord* (2001) 91 Cal.App.4th 1407, 1419 [111 Cal.Rptr.2d 511], even where the ordinance (Concord Mun. Code, former § 5015) required a showing of "unique or extraordinary circumstances," in language very close to that in *Vega*'s West Hollywood ordinance, the court rejected the argument that the "extraordinary circumstances" must conform to the factual circumstances set forth in other cases, including *Vega.*

Here, the Rent Board's denial of the base year rental adjustment seems arbitrary or unreasonable where: (1) the Rent Board used a requirement ("unique circumstances") that was not in the Ordinance or the Guidelines to deny the adjustment; (2) the resolution rejecting the *Vega* adjustment was based on the state of evidence available *before* the hearing; and (3) as the trial court had tentatively decided, "In this case, the consultants retained by each side differed on the amount, but agreed that an adjustment was necessary. *As such, there was no evidence at all, much less substantial evidence, to support the Board's finding that no adjustment at all was necessary.*" (Italics added.) (We recognize that in its final decision, the court concluded the Rent Board properly denied the *Vega* adjustment, in part, because Stardust failed to meet the requisite showing that some "unique" circumstance caused the below-market rent.)

The court also concluded that the Rent Board properly denied the *Vega* adjustment because its only proof consisted of "the contention that the then (and now deceased) owner of the park was friendly with her tenants to the extent of allowing sympathy to prevent her from appropriately raising rent [and that was] without sufficient evidentiary foundation." The court's reference to the lack of sufficient foundation probably relates to the City's objection that MacKay's testimony was "hearsay" and that the Rent Board could not rely solely on hearsay testimony.

■ Stardust also contends that the City waived any hearsay objection to MacKay's testimony, citing *Borror v. Department of Investment* (1971) 15 Cal.App.3d 531, 544–547 [92 Cal.Rptr. 525], and other cases. Another line of cases, however, holds that an objection during the hearing is not necessary to preserve the issue. (See, e.g., *Martin v. State Personnel Bd.* (1972) 26 Cal.App.3d 573 [103 Cal.Rptr. 306].) In *McNary v. Department of Motor Vehicles* (1996) 45 Cal.App.4th 688, 696 [53 Cal.Rptr.2d 55], the court concluded that the better view is that an objection is not necessary to preserve the issue on review.

In this case, without a hearsay objection during the hearing, Stardust had no opportunity to address the objection, provide additional foundational testimony, or present other evidence in place of MacKay's testimony. We remand the case to the trial court with directions to allow Stardust to make a showing regarding the relevant foundational testimony or other evidence Stardust would provide. If the trial court determines that Stardust can present admissible, relevant evidence concerning its rental policy during the base year, it shall remand the case to the Rent Board to reconsider Stardust's application for a *Vega* adjustment. If Stardust presents admissible evidence that, during the base year, its park owner kept rents lower than market values because of concern for elderly tenants, the Rent Board shall consider whether or not such evidence shows that Stardust followed "a policy" not in accord with the intent or purpose of the Ordinance and reconsider its application for an adjustment of base year rents.

Respondents argue that since the Rent Board was correct in indexing the "base year" or "adjusted base year" NOI by 50 percent of the CPI percentage change, the adjustment of base year rents makes no difference. This argument ignores the requirement that "a rent control law [that] establishes a 'base rent' by reference to rents on a specified date . . . should permit adjustments of that base rent for those rental units that had artificially low rents at that time." (*Kavanau, supra*, 16 Cal.4th at p. 772.)

3

*The Trial Court Properly Dismissed Stardust's Claims that
the Application of the Rent Control Ordinance Violated Its
Constitutional Right To Be Compensated for the Taking of
Its Property*

Stardust challenges the trial court's dismissal of its taking and due process claims. Before the court issued its decision regarding the writ, the United States Supreme Court issued its decision in *Lingle*, which eliminated the " 'failure to substantially advance' " theory as a basis for a taking claim. (*Lingle v. Chevron U.S.A. Inc., supra*, 544 U.S. at p. 536 (*Lingle*).) Stardust argued below that *Lingle* did not address its *Penn Central* (*Penn Central Transp. Co. v. New York City* (1978) 438 U.S. 104 [57 L.Ed.2d 631, 98 S.Ct. 2646]) regulatory taking claim. Without stating that it intended to consolidate the previously bifurcated takings cause of action, the court issued its decision which addressed the taking claim, and stated that, under *Lingle*, a per se taking occurs only when there is a physical invasion or an economic regulation that "completely deprives an owner of all economically beneficial use," which neither the Ordinance nor the Rent Board had effected. The decision also stated: "It is not the court's intention to give Petitioner short shrift on its . . . taking claim. [T]he *Lingle* requirements are not present here. If Petitioner thinks otherwise, the arguments are best presented to a reviewing court. This court finds that *Lingle* is dispositive." Stardust objected to the decision, among other reasons, because it had been denied notice and opportunity to be heard on its taking claim. The court filed judgment on September 15, 2005, and issued a minute order stating that the judgment in favor of the City was granted and that the second (taking) cause of action was dismissed in its entirety because it was moot.

Stardust argues that it has a right to a true de novo trial with discovery on its taking claims. In so arguing, Stardust relies upon *Hensler v. City of Glendale* (1994) 8 Cal.4th 1 [32 Cal.Rptr.2d 244, 876 P.2d 1043]; *Healing v. California Coastal Com.* (1994) 22 Cal.App.4th 1158 [27 Cal.Rptr.2d 758] (*Healing*); and *Los Altos, supra*, 139 Cal.App.4th at page 648. The trial court properly dismissed Stardust's taking claims.

Stardust correctly states that, in *Hensler*, the California Supreme Court recognized that a writ of administrative mandamus is not a substitute for a

trial on an inverse condemnation claim and approved the right of a property owner to bring an inverse condemnation claim together with a writ of mandamus claim. (*Hensler v. City of Glendale, supra*, 8 Cal.4th at p. 15.) Stardust also stresses that the *Healing* court upheld the right of a property owner to assert a taking claim regardless of the outcome of a writ of mandamus. (*Healing, supra*, 22 Cal.App.4th at pp. 1173–1174.) But both *Hensler* and *Healing* involved challenges to land use restrictions, where the administrative agency, a zoning board, had no procedure for granting compensation for temporary takings. In land use cases, the only way for a property owner to obtain such compensation is by filing a taking claim in court. In that context, *Hensler* and *Healing* allowed the property owner to assert a taking claim, in addition to a writ of mandamus. In contrast, where a property owner challenges the application of a rent control ordinance, if the court grants a writ, it remands the case to the agency, the rent board, which does have a procedure for granting compensation. (See *Kavanau, supra*, 16 Cal.4th at pp. 782–786.) The need for access to the court to collect compensation is not the same in zoning cases and rent control cases.

Stardust also relies on *Los Altos, supra*, 139 Cal.App.4th 629, in challenging the dismissal of its taking claim. In *Los Altos*, a park owner filed a complaint for declaratory relief based on taking theories, and an inverse condemnation claim, with a petition for writ of administrative mandamus to set aside a rent decision. The court sustained a demurrer to the declaratory relief and taking causes of action without leave to amend. In a subsequent hearing of the writ petition, the court concluded that the park owner's taking claims lacked merit. (*Id.* at p. 651.) The *Los Altos* court concluded that the trial court erred because it denied the park owner's postwrit request to amend its complaint to state a "ripe" taking claim and because it applied a due process test in determining the validity of the taking claim. (*Id.* at pp. 651–652.) In contrast, the court below heard the writ petition before it dismissed the taking claim, and Stardust did not seek to amend its complaint.

Stardust's taking claim was based in part upon a failure of the Ordinance to "substantially advance" a legitimate public purpose. This theory was rejected by the United States Supreme Court in *Lingle, supra*, 544 U.S. 528, shortly before the trial court issued its decision below. Stardust argues *Lingle* did not dispose of the regulatory taking claim under *Penn Central Transp. Co. v. New York City, supra*, 438 U.S. 104 (*Penn Central*). While *Lingle* may not have disposed of that claim, in denying the writ, the court below necessarily resolved the factors relevant to *Penn Central* regulatory taking claims and resolved them against Stardust.

■ In *Kavanau*, our state Supreme Court considered *Penn Central*'s regulatory taking claims in the context of rent control regulation. (*Kavanau, supra*, 16 Cal.4th at pp. 774–777.) "When a regulation does not result in a physical invasion and does not deprive the property owner of all economic use of the property, a reviewing court must evaluate the regulation in light of the 'factors' the high court discussed in *Penn Central* and subsequent cases. *Penn Central* emphasized three factors in particular: (1) '[t]he economic impact of the regulation on the claimant'; (2) 'the extent to which the regulation has interfered with distinct investment-backed expectations'; and (3) 'the character of the governmental action.' " (*Id.* at p. 775.)

■ Later, in *Galland*, the court stated, "[P]rice control regulation, including rent control, involves a distinct branch of constitutional inquiry under the due process clause. Such regulations are generally found to pass constitutional muster 'so long as the law does not deprive investors of a "fair return" and thereby become "confiscatory." . . . Determining prices that will provide a fair return "involves a balancing of the investor and the consumer interests." . . . "It is the product of expert judgment which carries a presumption of validity." . . . A reviewing court focuses on whether the regulatory agency took relevant investor interests into account. . . . ". . . It is not theory but the impact of the [price regulation] which counts." . . . In sum, when considering whether a price regulation violates due process, a "court must determine whether the [regulation] may reasonably be expected to maintain financial integrity, attract necessary capital, and fairly compensate investors for the risks they have assumed, and yet provide appropriate protection for the heart of relevant public interests, both existing and foreseeable." ' [Citation.] In other words, rent regulation must not prevent an efficient enterprise from ' " 'operating successfully,' " ' but rent regulators are permitted to adjust prices 'within a *"broad zone of reasonableness,"* ' balancing the interests of landlords and tenants." (*Galland, supra*, 24 Cal.4th at pp. 1021–1022, italics added, citations omitted.)

Here, the trial court concluded that substantial evidence supported the Rent Board's decision except for its ruling on driveway expenses, and the court remanded the case to the Rent Board which granted Stardust compensation—a rent increase that included the driveway expenses, plus interest on those expenses. In evaluating the writ, the court necessarily considered the factors that our state Supreme Court indicates must be considered in evaluating *Penn Central* taking claims. The court concluded that Stardust had no taking claim and correctly decided that the rent increase granted to Stardust provided it with a return that fell within the requisite " ' *"broad zone of reasonableness."* ' " (*Galland, supra*, 24 Cal.4th at pp. 1021–1022, italics added.) Having done so, the court properly dismissed the taking claim.

4

*The Trial Court Did Not Deny Stardust Procedural Due
Process*

Stardust contends it was denied procedural due process because it was denied discovery, the right to a separate trial on its taking claim "without even the benefit of a noticed motion," and cross-examination. Stardust further contends that the participation of the City's "litigation" counsel in the administrative proceedings was a due process violation. We reject these contentions.

█ Due process does not necessarily include the right to cross-examination. (*Mathews v. Eldridge* (1976) 424 U.S. 319 [47 L.Ed.2d 18, 96 S.Ct. 893].) Unlike cases that turn upon the testimony of live witnesses, cases involving documentary evidence do not carry a critical need to inquire into credibility via cross-examination. In the Rent Board proceedings below, the parties had full access to the information relied upon by the Rent Board, which included reports from experts for both sides, and their responses to each other's materials. The Rent Board mentioned its access to that material in denying Stardust's request for cross-examination. (See *id.* at pp. 345–346.) In administrative proceedings, "a formal hearing accompanied by the full rights of confrontation and cross-examination" is not necessarily required. (*Ryan v. California Interscholastic Federation-San Diego Section* (2001) 94 Cal.App.4th 1048, 1072 [114 Cal.Rptr.2d 798].) Stardust cites no cases compelling cross-examination in rent review hearings. The denial of cross-examination during the Rent Board hearing did not deprive Stardust of due process.

█ We also reject Stardust's contention that it was entitled to a separate trial on its taking claim. There is no requirement for a trial on a taking claim where the court finds that there is no taking as a matter of law. (See *Kavanau, supra,* 16 Cal.4th at pp. 780–781.) In *Herzberg v. County of Plumas* (2005) 133 Cal.App.4th 1, 18 [34 Cal.Rptr.3d 588], the court "conclude[d] the trial court . . . properly concluded plaintiffs have not and could not plead a regulatory taking as a matter of law." Although Stardust complains that it was denied a trial on its taking claim without the benefit of a noticed motion, Stardust had some notice of the court's impending dismissal, as evidenced by the objections that it filed before the court issued its judgment. Further, the court was able to review the complaint (which Stardust had not sought leave to amend) and to determine that it did not state a taking claim as a matter of law before dismissing it. Under the circumstances, Stardust has shown no prejudice from the absence of a noticed motion.

██ We also reject Stardust's claim that the denial of discovery deprived it of due process. Because Code of Civil Procedure section 1094.5, subdivision (e) limits the admission of evidence in an administrative mandamus proceeding, it "necessarily restricts the scope of discovery in such [an] action." (*City of Fairfield v. Superior Court* (1975) 14 Cal.3d 768, 775 [122 Cal.Rptr. 543, 537 P.2d 375].) "An administrative mandamus action . . . reviews the administrative record which should contain all evidence the parties consider necessary to the resolution of contested issues. Consequently posthearing discovery may reasonably be limited to inquiries calculated to yield evidence which through no fault of the offeror does not appear in the administrative record." (*Id.* at pp. 774–775, fn. 6.)

Finally, we address Stardust's claim that the hearing process was biased because special counsel for the City (Lincoln) has advocated for the City in this litigation regarding the administrative functioning of rent control and cannot properly advise the Rent Board. We reject this claim. The record describes "Jim Neuerburg, Esq." as an assistant city attorney and a city staff representative. The Rent Board adopted the legal position presented by staff and the City's legal counsel (Neuerburg) in the proposed resolution. Lincoln is listed among the speakers, and, during the hearing, he responded to comments in a letter that the Rent Board had received from counsel for Stardust.

In arguing that Lincoln's participation biased the hearing process, Stardust cites *Nightlife Partners, Ltd. v. City of Beverly Hills* (2003) 108 Cal.App.4th 81 [133 Cal.Rptr.2d 234]. The *Nightlife* case is distinguishable. In *Nightlife*, a city attorney initially advised Beverly Hills regarding its denial of a permit for a cabaret. Beverly Hills and the applicant were parties to the appeal of the denial before a reviewing board. The court held that the city attorney could not subsequently advise the reviewing board because it involved an "objectionable overlapping of the role of advocate and decision maker . . . when [he] acted as both an advocate of [c]ity's position and as adviser to the supposedly neutral decision maker." (*Id.* at p. 94.) Here, Lincoln advised the Rent Board that considered the applications and appeared on behalf of the Rent Board and the City in superior court where the judge was reviewing the Rent Board's decision. If Lincoln had represented and advised the superior court (the decision maker) concerning the Stardust rent control matter, rather than acting as an advocate in open court, Stardust's bias argument would be relevant. Although Lincoln's firm represented the City and the Rent Board in superior court, that is not equivalent to advising the decision maker who reviews the Rent Board rulings.

We remand this case to the trial court to conduct a hearing to allow Stardust to make a showing regarding the foundational testimony or other relevant evidence it can provide concerning its rental policy during the base year. If the court determines that Stardust can present admissible evidence concerning this issue, the court shall remand the case to the Rent Board to reconsider Stardust's application for a *Vega* adjustment in base year rents. The Rent Board shall then reconsider Stardust's application for a base year rental adjustment. In all other respects, we affirm the judgment.

Costs are awarded to respondents.

Gilbert, P. J., and Perren, J., concurred.