[No. B038149. Second Dist., Div. Five. Sept. 19, 1990.]

JOHN STACEY VEGA, as Executor, etc., et al., Plaintiffs and Appellants, v.
CITY OF WEST HOLLYWOOD et al., Defendants and Appellants.

**COUNSEL**

Lawrence & Harding, Christopher M. Harding and Elizabeth A. Stern for Plaintiffs and Appellants.

Michael Jenkins, City Attorney, Richards, Watson & Gershon, Rochelle Browne, Michael Jenkins and Carol W. Lynch for Defendants and Appellants.

## OPINION

**BOREN, J.**—The issue in this case is how, under a particular municipal rent control ordinance and peculiar circumstances, rental rates must be determined. The property owner here, for unusual reasons, had suppressed her rental rates significantly below the market for comparable units during the 1983 base year of the Rent Stabilization Ordinance (Ordinance) of the City of West Hollywood (City). The City contends that pursuant to the Ordinance, other rents charged for comparable units during the base year must be considered only after the property owner shows her net operating expenses do not provide a fair and reasonable return. On the other hand, the property owner urges that after she rebuts the presumption of a fair base year net operating income by establishing peculiar circumstances during the base year, the base year rent may be adjusted consistent with prevailing rents for comparable units during the base year. We agree with the latter position and affirm with directions to the Rent Stabilization Commission.

### FACTS

During 1983, Mary Simonson, an 84-year-old widow, owned a 9-unit apartment building on Hancock Avenue in West Hollywood. Simonson and her husband had purchased the property and built the apartment units approximately 40 years earlier. Simonson lived in one of the units and managed and operated the property, which was not encumbered by a mortgage. After Simonson sustained a hip injury in late 1983, she retained Anna Boyce, who moved into one of the apartment units and managed the property for Simonson. In exchange for her services, Boyce lived in the unit without having to pay rent.

Five of the other units in the apartment building were occupied by long-term elderly tenants who accepted responsibility for the majority of the maintenance and repair work on their units with the understanding that Simonson would keep their rents low. In 1983, the rents ranged from $70 to $180 per month. For several of the units, there had been no rent increase for 15 to 20 years. Also, two of the units were intentionally left vacant after Simonson interviewed but rejected prospective tenants.

Boyce recognized that Simonson needed additional income to cover both the medical expenses incurred after her hip injury and the increased expenses associated with the property. At Boyce's suggestion, commencing on June 1, 1984, Simonson increased the rents on five of the nine units. Boyce calculated the increase in the rents based on the cumulative yearly general adjustments which had been authorized under Los Angeles County's rent control laws. Simonson had not previously taken any of the yearly increases

permissible under the county's rent control laws. The county's rent control laws were in effect prior to the time West Hollywood became a city and, of course, prior to the City's Ordinance which established the City's own rent control scheme.

When the City's Ordinance became effective on September 1, 1985, it rolled back rents to the levels in effect on April 30, 1984. Accordingly, the Ordinance eliminated Simonson's June 1, 1984, rent increases, which had been premised on an understanding of the county's rent control laws.

In January of 1986, Boyce filed on Simonson's behalf an application for a rent increase with the City's rent stabilization department (Department). In support of the rent increase application, Boyce conducted an informal rent survey which revealed that the rents charged by Simonson were far below the rents charged for comparable units in the area. The application thus sought to raise Simonson's rents to levels approximating those of comparable units in the neighborhood.

After an evidentiary hearing in April of 1986, the Department's hearing examiner issued a written opinion and denied Simonson any rent increases. Simonson then appealed the decision to the City's rent stabilization commission (Commission). In her appeal, Simonson sought to increase the base date rents because her historically low rents constituted "peculiar circumstances," within the meaning of the Ordinance.[1] Simonson also argued that she was denied a "just and reasonable return," within the meaning of the Ordinance.[2] The Commission invited Simonson to present evidence demonstrating the amount of return from the building which she considered just and reasonable. In response, Simonson submitted federal Department of Housing and Urban Development guidelines with examples of fair rents in West Hollywood and a 1985 survey of rents in the area, but no information

---

[1] Section 6411(C)(1) of the Ordinance provides, in pertinent part, as follows: "f. *Presumption of Fair Base Year Net Operating Income.* Except as provided in subsection (g), it shall be presumed that the net operating income produced by the property during the base year provided a fair return (fair net operating income). Landlords shall be entitled to earn a just and reasonable return and to maintain and increase their base year net operating income in accordance with subparagraph (h) herein. [¶] g. *Rebutting the Presumption.* It may be determined that the base year net operating income yielded other than a fair return, in which case, the base year net operating income may be adjusted accordingly. In order to make such a determination, the Commission must make at least one of the following findings: [¶] (i) The landlord's operating and maintenance expenses in the base year were unusually high or low in comparison to other years . . . . [¶] (ii) *The rent on the base date was disproportionately low due to* the fact that it was not established in an arms-length transaction or other *peculiar circumstances.*" (Italics added.)

[2] Ordinance, section 6415, as then in effect, provided that "Nothing in this Chapter shall be construed to prevent the grant of a rent adjustment upon application by a landlord when required to permit a just and reasonable return to the landlord."

regarding her investment in the property or her return from that investment. On May 20, 1986, the Commission failed to reach a majority decision. The decision of the hearing examiner thereby became final.

On August 18, 1986, Simonson filed in the superior court a petition for writ of administrative mandate. The court issued a writ and remanded the case to the Commission for further consideration. The court ruled that the Commission cannot treat as irrelevant evidence of comparable rents. The court also determined that the requirement in section 6415 of the Ordinance of a "just and reasonable return" can provide a basis for adjusting rents independent of a possible showing under section 6411(C)(1)(g)(ii) of the Ordinance of a "disproportionately low" net operating income in the base rent year.[3]

The City did not appeal the judgment of the superior court. However, the City did amend section 6415 of the Ordinance. As indicated in a statement accompanying the amendment, it was adopted specifically in response to the judgment of the superior court in this case and was intended to "clarify" the City council's original "intent" that the "just and reasonable return" requirement in section 6415 should be used in conjunction with a NOI formula analysis.[4]

The Commission also enacted a new provision in the Rent Stabilization Regulations (Regulation 60043) which established criteria for determining whether rental units are comparable. The new regulation provided, in part, that if a party wishes to assert at a hearing on a rent increase application that the rent charged on the base date was "disproportionately low" (see Ord., § 6411(C)(1)(g)(ii)), "evidence of rents for comparable units may be considered and evaluated along with other relevant evidence in light of the circumstances of the case." Moreover, the new regulation established that comparable units owned by other landlords are "presumed," unless demonstrated otherwise, to produce a "just and reasonable return" as to the NOI. (See Ord., § 6411(C)(1)(f).)

Soon after the Commission's enactment of the new regulation and the City's amendment to section 6415 of the Ordinance in June and July of

---

[3] The net operating income, so-called NOI, is the gross property income minus operating expenses exclusive of debt service. Once the base rent is established, rent increases are set pursuant to the Ordinance by a NOI formula analysis which focuses on the property's rate of financial return.

[4] Section 6415, as amended, added the following to the original language of the section: "This Section is a savings clause which provides a basis for a hearing examiner or the Rent Stabilization Commission to receive relevant evidence, in accordance with regulations promulgated by the Commission, demonstrating that a landlord is not receiving a just and reasonable return under the provisions of the Net Operating Income Formula so that the application of the Formula may be modified to provide a just and reasonable return. Thus, this Section does not provide a basis for evaluating rent increase applications independent of the Net Operating Income Formula."

1987 the Commission held further hearings on Simonson's rent increase application, pursuant to the superior court's judgment remanding the matter. At the hearings, Simonson presented expert testimony from a real estate appraiser concerning the fair market rents for Simonson's units as of the base rent date. The appraiser established that on the base rent date the fair market rents for Simonson's rental units were approximately three times greater than the rents actually charged by Simonson.

At the conclusion of the hearing, the Commission found that peculiar circumstances caused the base rents on Simonson's units to be disproportionately low. The peculiar circumstances were, among others, that Simonson had decided not to raise rents for many years and had lost the rent increases imposed in June of 1984 when rents were rolled back. However, the Commission rejected the appraiser's conclusions regarding rent levels. The Commission concluded, "While comparable rents were introduced, and those rents were presumed to be fair and reasonable, no evidence was presented which demonstrated the actual expenses of the other buildings, the specific amount of return that was generated by the other buildings and the relationship of the expenses and return to Mrs. Simonson's expenses and return. The Applicant also has not established that the specific return which this landlord contends is just and reasonable, is in fact just and reasonable, as opposed to any other return."

The Commission decided to use as base rents for Simonson's units those rents in effect on June 1, 1984, which reflected the rent increases rolled back by the City's Ordinance and which had been calculated by Boyce based on her understanding of allowable rent increases under the County's rent control scheme then in effect. The Commission deemed the June 1, 1984, rents "the best evidence demonstrating the return from the property which would have been fair and reasonable." On July 22, 1987, the Commission then granted Simonson rent increases based on its use of the June 1, 1984, rents as the base date rents and its application of the NOI formula under the Ordinance.

On October 6, 1987, Simonson filed in the superior court a supplemental petition for writ of administrative mandate. She contended that upon remand the Commission had failed to proceed in a manner directed by the superior court and had abused its discretion by rejecting uncontroverted evidence from the appraiser, by selecting arbitrarily the rents in effect on June 1, 1984, as providing a fair return on the base rent date, and by failing to adjust base rents to reflect market conditions on the base rent date. On

July 7, 1988, the superior court again granted Simonson's petition and again remanded the matter to the Commission.[5]

This appeal and cross-appeal followed.[6]

DISCUSSION

## I. Constitutional Constraints

In *Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129 [130 Cal.Rptr. 465, 550 P.2d 1001], the Supreme Court explained that a municipality could properly adopt a rent control ordinance pursuant to its police powers if the provisions of such ordinance "are reasonably calculated to eliminate excessive rents and at the same time provide landlords with a just and reasonable return on their property." (*Id.* at p. 165.) The court found Berkeley's rent control scheme constitutionally deficient in that the particular method established for administering increases in the base rents was confiscatory because the system of necessity made unreasonable delays inevitable. (*Birkenfeld, supra,* at p. 169.) The administrative "mechanism is sufficient for the

---

[5] The court indicated in its statement of decision that when the Commission determines a base date rent adjustment, after a finding that the base date rentals are disproportionately low, "the Commission [need not] rely solely on the evidence of market conditions at the appropriate time. The Commission must give market conditions due consideration, and cannot arbitrarily reject those factors, nor set unreasonable standards for applying them. Market conditions are clearly relevant." Moreover, the "Commission's determination that the June 1, 1984, rents established by the petitioner was 'the best evidence demonstrating the return from the property which would have been fair and reasonable' is unsupported by substantial evidence since that decision was based upon the erroneous conclusions that petitioner had to demonstrate certain additional factors concerning comparable properties in order for the Commission to consider market conditions in making the adjustment." The court further stated that with regard to the June 1, 1984, rent increases, "In considering this evidence the Commission is certainly obliged to take into account that petitioner's agent performed no survey of comparable rents on this occasion to arrive at these rents."

[6] After Simonson's death, this court granted a motion by the executors of her estate to substitute them as parties on appeal.

The executors of Simonson's estate have cross-appealed, in large part, to contest the superior court's application of the substantial evidence test which the court used because it found "no fundamental vested right is involved." The executors urge that the superior court should have used the independent judgment test in reviewing the Commission's fact-findings. We find that the standard of review used by the superior court in assessing the Commission's factual findings is of no consequence. It is of no consequence because the issue before the court was legal and not factual. The issue involves the legal appropriateness of the Commission's method of dealing with the facts. There are essentially no disputed adjudicative facts. (*Southern Pacific Transportation Co.* v. *State Bd. of Equalization* (1987) 191 Cal.App.3d 938, 956 [237 Cal.Rptr. 191]; see *Bret Harte Inn, Inc.* v. *City and County of San Francisco* (1976) 16 Cal.3d 14, 23 [127 Cal.Rptr. 154, 544 P.2d 1354]; *Jones* v. *County of Los Angeles* (1981) 114 Cal.App.3d 999, 1004-1005 [170 Cal.Rptr. 879].) Our ensuing discussion of the City's appeal disposes of other matters of which the executors complain in their cross-appeal regarding certain wording in the superior court's statement of decision.

required purpose only if it is capable of providing adjustments in maximum rents without a substantially greater incidence and degree of delay than is practically necessary." (*Ibid.*)

*Birkenfeld* also discussed two other ways in which the administrative mechanism for establishing rent ceilings could operate improperly and run afoul of constitutional constraints. Rent ceilings of an indefinite duration would be confiscatory and thus unconstitutional if no adjustment mechanism existed (1) to provide for changes of circumstance and (2) to provide, as relevant to the ordinance under review, for "situations in which the base rent cannot reasonably be deemed to reflect general market conditions." (*Birkenfeld* v. *City of Berkeley, supra*, 17 Cal.3d at p. 169.)

The rent control ordinance under review is typical in that it uses the rent charged on a fixed prior date "as a starting point for the fixing of maximum rents on the theory that it approximates the rent that would be paid in an open market without the upward pressures that the imposition of rent control is intended to counteract." (*Birkenfeld, supra*, at p. 166.) When base date rents can be adjusted to reflect prevailing rents for comparable units, everyone within the ambit of the rent control scheme participates on an equal footing. We thus address whether the City's Ordinance and the Commission's regulations provide for the establishment of base rents which reflect the requisite market conditions and which thus "establish an effective mechanism to assure the proper implementation of its policy decisions." (*Kugler* v. *Yocum* (1968) 69 Cal.2d 371, 377 [71 Cal.Rptr. 687, 445 P.2d 303].)

## II. *Interpretation and Application of Section 6411 of the Ordinance*

Section 6411(C)(1)(g) of the Ordinance seeks to ensure a fair base date rent. However, it does not focus upon adjusting base date rents to reflect prevailing rents for comparable units. Rather, it addresses the landlord's right to "a just and reasonable return" and provides that the presumption of a fair base year net operating income can be rebutted by establishing that the rent on the base date was "disproportionately low" due to peculiar circumstances. Section 6411(C) does not specify how to adjust the base date rent to ensure a fair return, meaning, in the terms of the Ordinance, a "fair net operating income."

Nor does Regulation 60043 establish any guidelines for the Commission to determine the base date rent adjustment. The regulation merely outlines various criteria for deciding whether the rents on the base date are "disproportionately low." Following the Commission's initial determination, which is not contested in this appeal, that the base date rents were disproportion-

ately low, the Commission was left with no specific guidelines about how to adjust the base date rents.

 Nonetheless, the Commission sought to adjust base date rents apparently by applying the rebuttable presumption of a fair net operating income during the base year, as described in section 6411(C)(1)(f) of the Ordinance, to require the landlord to provide more than just comparative market information concerning the rents charged for comparable units. The Commission required the landlord to provide comparative operating and investment expense data as to both the landlord's units and the comparable properties.

We find this requirement of providing operating and investment expense data as to comparable properties to be unauthorized by any language in the City's rent control scheme. This requirement imposed by the Commission is also potentially unreasonably burdensome and costly. The landlord would likely have to subpoena personal financial information concerning the acquisition and operation of the comparable properties and to provide expert testimony comparing this financial data to the financial data for the landlord's property. To the extent that the Commission's requirement entails extensive, burdensome and unnecessary data, it could create, as *Birkenfeld* condemned in an analogous context, "a substantially greater incidence and degree of delay than is practically necessary." (*Birkenfeld* v. *City of Berkeley, supra,* 17 Cal.3d at p. 169.)[7]

Moreover, it is ironic that the Commission selected the June 1, 1984, rents as the new base date rents without using the type of operating and investment expense data required of but found lacking in the figures submitted by the landlord's real estate appraisal firm. There is also an arbitrary appearance to the Commission's conclusion that the June 1, 1984, base date rents (reflecting permissible rents under the County's rent control ordinance then in effect) were "the best evidence demonstrating the return from the property which would have been fair and reasonable." Although the Commission's conclusion affected all seven of the units which were rented, the June 1, 1984, rents only reflected rent increases imposed on five of the units. As one of the Commission members observed, the decision to use the June 1, 1984, rents as the base date rents reflecting a fair and reasonable return

---

[7] We note that the data demanded by the Commission appear largely unnecessary. The Commission enacted Regulation 60043, which provides, in part, that comparable units owned by other landlords are "presumed," unless demonstrated otherwise, to produce a just and reasonable return. Also, the regulation defines comparable rental units as having, in part, *substantially the same services, amenities and attendant expenses.* Since such expenses on comparable properties are presumed to be comparable, there is no need to require the landlord to demonstrate these expenses.

on the property was a Solomon-like approach which would likely satisfy no one.

Most significantly, the critical questions are not whether the base date rents establish a "fair and reasonable" return and whether the base date rents, even if low, are within "a range of rents which can be charged." (*San Marcos Mobilehome Park Owners' Assn.* v. *City of San Marcos* (1987) 192 Cal.App.3d 1492, 1502 [238 Cal.Rptr. 290].) Rather, the question is whether the base date rents can "reasonably be deemed to reflect general market conditions." (*Birkenfeld* v. *City of Berkeley, supra,* 17 Cal.3d at p. 169.) After base date rents are established which reflect general market conditions, then the Commission should apply and maintain the net operating income formula of the Ordinance. The rents which are then established must provide the landlord with the requisite "just and reasonable return." (See Ord., §§ 6411(C)(1)(f) and 6415, as amended.)

To the extent that the county's rent control system in effect on the base rent date regulated the rents in Simonson's neighborhood, it could reasonably be deemed to reflect market conditions. However, the base date rents should be similar for comparable properties, whether the calculation is done by the landlord's agent using the county's rent control law or by the City using the subsequently enacted Ordinance. There is no indication whether the assessment by the landlord's agent of the permissible rents under the county's rent control system factored in as an adjustment to the county's permissible base date rents the unique circumstances of the landlord's historically low rents. Absent such information or any details as to the actual calculation of the June 1, 1984, rent figures, we cannot conclude that those figures were sufficiently meaningful to use in establishing comparable rents. Although the landlord would have at one point agreed to use those rent figures, it does not establish that those figures were objectively fair and reasonable in terms of rents for comparable units.

Figures which were objectively fair and reasonable for comparable units did exist. The landlord's real estate appraisal firm presented extensive data establishing the rents for other units in the area and the comparable nature of those units to the landlord's units. In fact, several Commission members commented on the appraiser's "very fine piece of documentation and research." As the Commission concluded, "comparable rents were introduced, and those rents were presumed to be fair and reasonable."

III. *Conclusion*

We recognize that courts have specifically upheld the use of a fair return standard such as maintenance of a net operating income formula similar to

the one used in the City's Ordinance and have also rejected attacks on the propriety of an essentially investment-based standard. (See *Fisher* v. *City of Berkeley* (1984) 37 Cal.3d 644, 680-683 [209 Cal.Rptr. 682, 693 P.2d 261]; *Baker* v. *City of Santa Monica* (1986) 181 Cal.App.3d 972, 988 [226 Cal.Rptr. 755]; *Cotati Alliance for Better Housing* v. *City of Cotati* (1983) 148 Cal.App.3d 280, 286-290 [195 Cal.Rptr. 825].) The City's Ordinance properly seeks to maintain "the same rate of return, with adjustments for inflation, that [property owners] experienced prior to the enactment of rent control." (*Palos Verdes Shores Mobile Estates, Ltd.* v. *City of Los Angeles* (1983) 142 Cal.App.3d 362, 371 [190 Cal.Rptr. 866].) Nonetheless, a property owner must be permitted, pursuant to the principles discussed in *Birkenfeld* v. *City of Berkeley, supra,* 17 Cal.3d 129, to start rent calculations with a base date rent similar to other comparable properties.

■ As to the rent calculations to be determined in the present case, a court "may compel [an] agency to act, but it may not substitute its discretion for the discretion properly vested in the administrative agency . . . 'Courts should let administrative boards and officers work out their problems with as little judicial interference as possible . . . .'" (*Lindell Co.* v. *Board of Permit Appeals* (1943) 23 Cal.2d 303, 315 [144 P.2d 4]; see *Faulkner* v. *Cal. Toll Bridge Authority* (1953) 40 Cal.2d 317, 326 [253 P.2d 659]; *Carlton Santee Corp.* v. *Padre Dam Mun. Water Dist.* (1981) 120 Cal.App.3d 14, 28 [174 Cal.Rptr. 413].) ■ Here, however, the Commission has already exercised its discretion as to the determination we deem dispositive.

The Commission determined, in pertinent part, that the evidence presented by the landlord's appraiser reflected "comparable rents" which "were presumed to be fair and reasonable." The appraiser's documentation was unimpeached and, indeed, deemed impressive by several members of the Commission. The landlord also supplied the Commission with all the information required by the Ordinance to adjust rents under the rent adjustment formula. Accordingly, the Commission's discretion would not be inappropriately limited by our directive that it set the landlord's base date rents consistent with the appraiser's evidence of rents for comparable units and then apply the Ordinance's maintenance of net operating income formula to establish the current maximum allowable rents.[8]

DISPOSITION

The judgment is modified to the extent that the West Hollywood Rent Stabilization Commission is directed to set the base date rents consistent

---

[8] As to attorney's fees, the executors of Simonson's estate may recover attorney's fees, pursuant to the stipulation filed in the superior court on February 1, 1988, as modified by subsequent agreement of counsel, and pursuant to the terms as ordered by the superior court on October 3, 1988.

with the previously submitted evidence by the appraiser of rents for comparable units and then to use the appropriate formula to establish the current maximum allowable rents. In all other respects, the judgment granting the writ of administrative mandamus is affirmed. The City is to bear all costs on appeal.

Lucas, P. J., and Turner, J., concurred.

A petition for a rehearing was denied October 19, 1990, and the opinion was modified to read as printed above. The petition of defendants and appellants for review by the Supreme Court was denied December 20, 1990.