[No. B053374. Second Dist., Div. Five. Sept. 18, 1991.]

JUDITH GIVONI et al., Plaintiffs and Respondents, v.
SANTA MONICA RENT CONTROL BOARD, Defendant and Appellant.

**COUNSEL**

Anthony A. Trendacosta and Ralph H. Goldsen for Defendant and Appellant.

Rosario Perry for Plaintiffs and Respondents.

**OPINION**

**BOREN, J.**—The Santa Monica Rent Control Board (Board) appeals after the superior court issued a writ of mandate sought by Judith and Baruch

Givoni. The writ of mandate was based on the court's interpretation of the rent control law (Santa Monica City Charter, art. XVIII). The court mandated that the Board (1) vacate a base rent of $360 because the rental unit was converted to a condominium, owner occupied, and not a "controlled" rental unit on April 10, 1979, the effective date of the rent control law, and (2) use as the base rent $850, the first rent charged (on February 1, 1982) after the effective date of the rent control law. We affirm.

## FACTS

In 1975, the rental unit in question was part of an apartment building owned by one owner, Robert McGuirk. Marilyn Blake was then the tenant in the rental unit and paid $325 per month for rent. In 1977, her rent was raised to $360 per month until her tenancy ended on approximately June 15, 1978. Soon thereafter, McGuirk converted the apartment building into condominiums. In December of 1978, McGuirk sold the rental unit in question, as a condominium unit, to Ned Wynn. Wynn owned and resided in the unit until June of 1981, when he sold it to the Givonis.

After the sale in June of 1981, the Givonis rented the unit back to the former owner, Wynn, for one month. The rent was established in the offer to purchase and in the escrow instructions as $1,000. A realtor registered the unit with the Board at the $1,000 figure, and explained that the amount was not actually paid but was "credited through escrow."[1]

In February of 1982, the Givonis rented the unit to Loretta Khastoo, who paid $850 per month for rent. In July of 1986, Alex Ruggiero rented the unit for $1,200 per month.

In December of 1987, Ruggiero filed a base rent determination petition with the Board, seeking a reduction of the base rent to the first rent level after April 10, 1978, which he believed, based on his discussions "with all former occupants of my unit and with former tenants," was "$850." On June 1, 1988, a hearing examiner for the Board determined that the "base rent" for

---

[1]Due to a discrepancy and illegibility in the escrow documents submitted by the Givonis at the Board hearing (documents obtained from the real estate broker who represented the buyer and the seller), the Board disregarded the claimed rent-back figure of $1,000. The Board found that any agreement between Wynn and the Givonis was part of the sale price and not rent. The superior court remarked that "it was very generous of the Rent Control Board or the referee to state that he didn't implicate the Givonis in any fraud in connection with that bizarre piece of paper. And let's be polite and leave it on that level."

the unit is $360, effective April 10, 1978. On January 5, 1989, the Board reviewed the hearing officer's conclusion and determined, in pertinent part, that the base rent is $360 and that the "maximum allowable rent, consisting of the base rent with all general adjustments, excluding registration pass through surcharges, is $563 effective August 1, 1988."

Following a hearing on the Givonis' petition for a writ of mandate (Code Civ. Proc., § 1094.5), the superior court issued a writ of mandate vacating the Board's decision and ordering it to enter a new decision consistent with the court's determination that (1) on April 10, 1979, the unit was owner occupied and thus exempt at that time from rent control, and (2) the first rent collected after April 10, 1979, was rent of $850 per month as of February 1, 1982, which is the base rent for the unit.

## DISCUSSION

The Board contends that the superior court departed from the literal terms of section 1804 of the rent control law[2] in determining the base rent of the unit to be the first rent charged after the unit became a "controlled" rental unit within the meaning of section 1801(c) of the rent control law.[3] Accordinging to the Board, section 1804(b) provides that the base rent for a controlled rental unit is the rent in effect on April 10, 1978, and that the base rent is the first rent charged only when there was no rent in effect on April 10, 1978. As further urged by the Board, section 1804(b) provides for only one of two possible base rents: either the rent in effect a year before the adoption of the law (Apr. 10, 1978), or the rent charged after that date if no rent was in effect on April 10, 1978. The Board therefore concludes that the base rent is the rent charged on April 10, 1978, regardless of when a unit falls within the jurisdiction of the Board.

---

[2]Section 1804(b) of the rent control law provides as follows: "ESTABLISHMENT OF BASE RENT CEILING: Beginning one-hundred-twenty (120) days after the adoption of this Article, no landlord shall charge rent for any controlled rental units in an amount greater than the rent in effect on the date one year prior to the adoption of this Article. The rent in effect on that date is the base rent ceiling and is a reference point from which fair rents shall be adjusted upward or downward in accordance with Section 1805. If there was no rent in effect on the date one year prior to the adoption of this Article, the base rent ceiling shall be the rent that was charged on the first date that rent was charged following the date one year prior to the adoption of this Article."

[3]Section 1801(c) of the rent control law defines controlled rental units as all residential rental units in the City of Santa Monica, subject to certain specified exceptions such as hotels, motels, hospitals, convents, units owned or operated by a governmental authority, or rental units in some owner occupied dwellings.

However, the Board's interpretation ignores the language in section 1804(b), which establishes base rents after April 10, 1979, only for "controlled rental units." Section 1804(b) is essentially a jurisdictional definition of which housing units were within the ambit of the rent control provisions and which were excluded at the time the rent control law was adopted. The plain language of section 1804(b) indicates that the statute provides for a rollback to April 10, 1978, rent only as to units which were controlled on April 10, 1979. The parties here agree that the rental unit in question was not a controlled rental unit on April 10, 1979, because it was on that date a condominium occupied by its owner. Accordingly, the statute should not be construed to set Ruggiero's base rent using the $360 apartment rent of April 10, 1978, when on April 10, 1979, the date the rent control law was adopted, the unit was a condominium and not a controlled rental unit.

Rather, the base rent is properly established by using, as required by section 1804(b), "the rent that was charged on the first date that rent was charged following the date one year prior to the adoption of this Article." The superior court found that the rent on that date was $850, which thus became the base rent pursuant to section 1804(b).

■ The Board aptly notes that the use of any rollback date must reflect a fair market value to satisfy the constitutional requirement of due process (*Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129, 166 [130 Cal.Rptr. 465, 550 P.2d 1001]), and that when "base date rents can be adjusted to reflect prevailing rents for comparable units, everyone within the ambit of the rent control scheme participates on an equal footing." (*Vega* v. *City of West Hollywood* (1990) 223 Cal.App.3d 1342, 1349 [273 Cal.Rptr. 243].)
■ However, our reading of section 1804(b) treats similarly and fairly all housing units which were not controlled rental units on April 10, 1979, in that the base rent for such units is, in the terms of the statute, "the rent that was charged on the first date that rent was charged" after it became a controlled rental unit. Moreover, the Board's interpretation of section 1804(b) would effectively abrogate the specified one-year rollback provision and rewrite the statute to provide for an unlimited rollback period, which in the present case would result in an eight-year rollback.[4]

---

[4]The superior court observed: "What troubles me is . . . if the property had been off the market for 10 years instead of only three or four, it is your position that because of the accident in timing that Marilyn Blake was occupying these premises for one or two months at the beginning of the 12 months preceding the enactment of rent control, that notwithstanding Wynn's investment in the property the rent would have been 360 [dollars] plus whatever annual increases had been allowed over those 10 years, and I didn't feel comfortable with your reading of 1804 (b). That's all I can say."

## DISPOSITION

The judgment is affirmed.

Turner, P. J., and Ashby, J., concurred.