Filed 5/13/20 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| EL ROVIA MOBILE HOME PARK, LLC, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CITY OF EL MONTE, <br><br> Defendant and Respondent. | B295640 <br><br> (Los Angeles County Super. Ct. No. BS172209) <br><br> **ORDER MODIFYING OPINION** <br><br> [There is no change in judgment] |

BY THE COURT:

It is ordered that the opinion filed herein on April 23, 2020 is modified as follows:

On page 4, in the second full paragraph, delete "MAI," from the sentence, "This study was subsequently undertaken by Dr. Kenneth K. Baar, MAI, a recognized expert on mobilehome park issues." Delete footnote 5 (which states "MAI stands for Member Appraisal Institute, and refers to a professional designation for real estate appraisal") that immediately follows this sentence.

On page 7, renumber footnote 6 as footnote 5.

On page 8, in the first full paragraph, add footnote 6 to the end of the sentence that reads: "The petition included a real estate appraisal report prepared by John Neet, MAI, in which Neet expressed an opinion that the market value of spaces at the Park was $665 per month as of September 10, 2015." Footnote 6 shall read: "MAI stands for Member Appraisal Institute, and refers to a professional designation for real estate appraisal."

There is no change in judgment.

_____

RUBIN, P. J.          MOOR, J.          KIM, J.

2

Filed 4/23/20 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| EL ROVIA MOBILE HOME PARK, LLC, <br><br>     Plaintiff and Appellant, <br><br>     v. <br><br> CITY OF EL MONTE, <br><br>     Defendant and Respondent. | B295640 <br><br> (Los Angeles County <br>  Super. Ct. No. BS172209) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mitchell L. Beckloff, Judge. Affirmed.

Dowdall Law Offices and Terry R. Dowdall for Plaintiff and Appellant.

Olivarez Madruga Lemieux O'Neill and Rick R. Olivarez; Demetriou, Del Guercio, Springer & Francis, Jeffrey Z. B. Springer and Leslie M. Del Guercio for Defendant and Respondent.

_____

After respondent City of El Monte (the City) enacted rent control for all mobilehome parks, petitioner El Rovia Mobile Home Park, LLC (El Rovia LLC) applied for a base year rent adjustment to $665 per month per space. The City agreed that El Rovia Park (the Park) space rents were below market value, but found that the lawful rent for the 2012 base year was $525 per month. El Rovia LLC appealed this decision to an administrative law judge, who agreed with the City's findings. El Rovia LLC then sought a writ of administrative mandamus. In the writ proceeding, El Rovia LLC claimed that the base rent year should have been 2015, not 2012, and the base rent should be $665, not $525. The trial court denied the writ.

At the heart of the dispute is the City's 2015 rent control Ordinance No. 2860, which at least for some purposes states that in the calculation of rents, the base year is the "2012 calendar" year. (El Monte Ord. No. 2860, Mun. Code § 8.70.080, subd. (C)(1).)[1] El Rovia LLC contends that the City's use of 2012 as the base year violates the holding in *Vega v. City of West Hollywood* (1990) 223 Cal.App.3d 1342 (*Vega*). It claims the administrative law judge "arbitrarily refus[ed] to adjust the base date rent to one that reflects general market conditions."[2] Specifically, El Rovia

---

[1] Ordinance 2860 was later codified in El Monte Municipal Code section 8.70.010 et seq. Where appropriate, we use the Municipal Code citation.

[2] In *Vega*, the Court of Appeal held that the California Constitution required municipalities implementing rent control to allow property owners "to start rent calculations with a base date rent similar to other comparable properties." (*Vega, supra,*

LLC asserts the base rent year should have been 2015 (not 2012, the year identified in the rent control ordinance and utilized by the City) and argues substantial evidence does not support the finding that $525 was the reasonable base rent. We affirm, concluding that the administrative law judge applied the correct base year for rent control and substantial evidence supported its findings of the base year rent.

## *FACTS AND PROCEDURAL BACKGROUND*

### 1. Rent Control History in the City

In 2012, the City enacted Ordinance No. 2811, which established rent control for large mobilehome parks in the City.[3] The ordinance placed a moratorium on mobilehome rent increases in the two largest parks (Brookside with 421 spaces and Daleview with 175 spaces). It did not apply to smaller mobilehome parks such as the Park, which had only 77 spaces.

As part of its rent control process, the City retained an expert to evaluate mobilehome rental rates. In a report dated July 25, 2013 (the Waronzof Report), the expert expressed concern that the largest mobilehome park in the City, Brookside, had significantly higher rents than other mobilehome parks in the City and the region. The report also observed that most of the mobilehome park residents in the City were in the lower

---

223 Cal.App.3d at p. 1352.) *Vega's* focus is not on the date selected as the base rent date under rent control, but on the rent level that properly reflects the market conditions on that date.

[3] We mention Ordinance No. 2811, and later Ordinance No. 2829, only for historical purposes. The present dispute is governed by Ordinance No. 2860, enacted in 2015.

income range; and many parks in the City were smaller and older than those in the region surrounding the City.

In September 2013, the City approved its second rent control law, Ordinance No. 2829.[4]  That ordinance placed ceilings on rental rates and rent increases only at the two largest mobilehome parks in the City.  The ordinance acknowledged concerns expressed in the Waronzof study:  there was a shortage of housing in California; 80 percent of households in mobile homes in the City were in poverty; relocation of mobile homes is difficult, costly, and damages the home; mobilehome parks are susceptible to excessive and unfair rent increases due to private sector ownership; and monthly rents for certain mobilehome spaces in the City had exceeded the average rent for area apartments.

The 2013 ordinance also required the City to retain a consultant to conduct another demographic and economic study of mobilehome housing in the City.  This study was subsequently undertaken by Dr. Kenneth K. Baar, MAI, a recognized expert on mobilehome park issues.[5]  Baar found that mobilehome rent control in the City was triggered by exceptional rent increases in one large park (Brookside), which contained about one-third of all the mobilehome park spaces in the City.  Baar observed that rent increases in the other parks had not been a matter of serious concern.

---

[4]     Again, we mention this second ordinance only to give historical perspective.

[5]     MAI stands for Member Appraisal Institute, and refers to a professional designation for real estate appraisal.

4

**2.     Ordinance No. 2860**

On August 4, 2015, the city council approved Ordinance No. 2860, which replaced the earlier rent control ordinances and extended rent control to all mobilehome parks in the City, regardless of size.  It is this law that drives the present dispute.

In the preamble of Ordinance No. 2860, the city council acknowledged California's severe housing shortage, the unique problems associated with mobilehome ownership, the prior efforts to regulate a segment of mobilehome parks in the City, and the Baar report.  Section 8.70.010, subdivision (A) describes the purposes of the ordinance as preventing excessive and unreasonable rent increases, preserving available mobilehome spaces in the City, enabling mobilehome owners to preserve equity in their mobile homes, permitting park owners to receive a fair return on their investment, and preserving affordable spaces for rent in the City.

Ordinance No. 2860 states that no rent can be charged in excess of the rent in effect as of July 1, 2015, unless the City authorizes the increase through an application process. (§ 8.70.050.)  The ordinance identifies 2012 as the *base year* for rent and rebuttably presumes the net operating income received by the park owner in 2012 was fair and reasonable.  (§ 8.70.080, subd. (C)(1).)  The ordinance states:  "It is expected that a rent increase within the limits of [the Consumer Price Index (CPI) increase provision after the base year rent is established] will provide the mobilehome park owner with a fair and reasonable return."  (§ 8.70.080, subd. (A).)

A rent increase is authorized in the following situations: (1) a rise in the CPI (§ 8.70.060), (2) in-place sales of mobilehomes (§ 8.70.075), (3) maintenance of a fair return standard

5

(§ 8.70.080), and (4) new capital improvements (§ 8.70.100).  The fair return standard in section 8.70.080 is evaluated with a maintenance of net operating income (MNOI) formula for assessing the necessity for increases.  The MNOI formula offsets a park owner's operating income by its operating expenses, and compares the base year's net operating income to the year in which the owner applies for a rent increase.  (§ 8.70.080, subd. (E).)

Although the rent in fact charged in the base year is presumed to be the base rent under rent control, the ordinance allows for the mobilehome park owner to rebut the presumption that it had been receiving a fair return in the base year.  The owner may demonstrate this by "evidence provided by the mobilehome park owner to the city of gross income, operating expenses, and the determination of net operating income for the base year and current year."  (§ 8.70.080, subd. (D).)  For example, under section 8.70.080, subdivision (D)(2), park owners can present evidence at a rent control hearing to show that it did not receive a fair return in the base year because "gross income during the base year was disproportionately low due to exceptional circumstances."  In adjusting the base year rent under, subdivision (D)(2), the City shall consider (1) whether some residents were charged reduced rent, (2) whether the low rent was attributed to property destruction, (3) the pattern of rent increases in the years prior to the base year and whether those increases reflected increases in CPI, (3) whether base period rents were disproportionately low in comparison to the base period rents of other comparable parks in the City, and (4) other exceptional circumstances.  (§ 8.70.080, subd. (D)(2).)

6

Ordinance No. 2860 also provides "[n]othing in this chapter shall preclude the [c]ity [m]anager or hearing officer from granting an increase that is necessary in order to meet constitutional fair return requirements." (§ 8.70.080, subd. (H).)[6]

### 3. El Rovia Park

The Park is one of the 33 mobilehome parks in the City. There are approximately 1,427 individual mobilehome spaces for public rental. The Park has 76 spaces and is one of two parks in the City that are age-restricted for residents 55 years or older. The existing permanent improvements on the property (an office and laundry room) were built in 1950.

In early 2013 and prior to petitioner El Rovia LLC's purchase of the Park, Matthew Davies (one of El Rovia LLC's principals) examined the rental history of the mobilehome park and determined that rents in the Park were in the low $200s per month range. At about that same time, Davies met with the mayor and city attorney and became aware of the rent control measure under consideration for the larger mobile home parks. This early legislation did not cover the Park. El Rovia LLC purchased the Park for $2,642,500 in mid-2013 with the intention of gradually raising rents to market levels, which it believed to be in the high $600s.

### 4. Rent Adjustment Application

In 2015, after El Rovia LLC had purchased the Park, the City enacted Ordinance No. 2860, the law at the heart of the

---

[6] The "constitutional fair return requirements" is an apparent reference to the appellate court decisions in *Vega, supra*, 223 Cal.App.3d at p. 1342, and *Birkenfeld v. City of Berkeley* (1976) 17 Cal.3d 129 (*Birkenfeld*).

7

present dispute.  As earlier observed, the ordinance placed all mobilehome parks in the City under rent control.  It appears that by September 10, 2015, roughly a month after Ordinance No. 2860 was adopted, El Rovia LLC was charging rents as high as $550 per month per space.

On October 7, 2016, El Rovia LLC submitted to the City a petition for rental adjustments, seeking to increase rents for all of the Park's 76 spaces to $665 per month.  The petition included a real estate appraisal report prepared by John Neet, MAI, in which Neet expressed an opinion that the market value of spaces at the Park was $665 per month as of September 10, 2015.  This conclusion was based on Neet's analysis of six other mobilehome parks – Daleview (the only other age-restricted park in the City), three other parks in the City, and two parks outside the City, neither of which were age-restricted.[7]

In a November 2, 2016 letter, the City advised El Rovia LLC that the petition was incomplete because it lacked the income and expense information required by section 8.70.080, subdivision (D) for the MNOI analysis.  After receiving no response from El Rovia LLC, the City sent a letter on January 23, 2017 seeking further information.  On February 10, 2017, El Rovia LLC submitted further information but did not include the net operating income information specified in section 8.70.080, subdivision (D).  On March 10, 2017, the City again notified El Rovia LLC that it still deemed the petition incomplete.

---

[7]     Daleview was one of the two large (100 plus spaces) mobilehome parks affected by the City's initial rent control ordinances of 2012 and 2013.

8

In a March 15, 2017 letter, El Rovia LLC asserted that the City was required to process its application and argued that the City must establish a base year rent as of 2015 pursuant to *Vega v. City of West Hollywood*, *supra*, 223 Cal.App.3d. El Rovia LLC refused to provide any further financial information and demanded that the City deem its application complete.

In a letter dated March 22, 2017, the City pointed out that El Rovia LLC had still failed to provide all of the information required by section 8.70.080, subdivision (D). However, the City stated that it would "move forward" with the application. The City retained James Brabant, MAI, of Anderson & Brabant, Inc., to review Neet's appraisal, and formulate an opinion of the space rental value of the Park for the 2012 base year. Brabant reviewed Neet's report and took issue with (1) Neet's failure to use 2012 as the base year as required by the ordinance, (2) Neet's factually inaccurate report of average rent at Daleview, (3) Neet's unexplained use of two parks outside of the City (one with very high rent and neither having age restrictions), and (4) Neet's failure to consider 2015 Park rents that ranged from $500 to $550.

Brabant concluded that: "Of the four parks Neet used that are comparable according to the ordinance (Daleview, Santa Fe MHP, Capri Gardens and Vagabond Villa), the two that in my opinion are superior to the subject had adjusted average rents ranging from $676 to $700 per month. The two parks rated inferior to the subject had average adjusted rents ranging from $515 to $520 per month. The three most recent rents negotiated in June and July of 2015 at the subject park were at $550 per month which is consistent with the comparable data that brackets that amount. Therefore, it is my opinion that Neet's

conclusion of an average rent of $665 per month in 2015 is overstated."

Using the four parks identified as comparable and two additional parks Brabant deemed relevant, Brabant appraised mobilehome park rents in 2012, the base year identified in the ordinance. He analyzed each property as either being superior or inferior to the Park and examined the rents for each—ranging from $400 to $700 per month. He concluded that the average rental value of $525 per month per space was the reasonable base rent for the Park as of 2012. Brabant provided a second opinion that "based upon a review of 2017 Registrations from park owners, contacts with park management, and inspections of the various parks," "the average rental value of El Rovia [Park], as of April 2017, is $575 per month, including sewer."

In a May 18, 2017 letter, the city manager informed petitioner that the City had completed its review of the rent adjustment application, that in 2012 the fair rental value for the Park spaces was $525, and that the fair rental value of the Park spaces *as of April 2017*, was $575 per month per space.[8]

On June 6, 2017, El Rovia LLC appealed the City's determination and requested a hearing.

## 5.    Administrative Hearing

On September 6, 2017, an administrative law judge (ALJ) with the State of California Office of Administrative Hearings

---

[8]    The difference between the monthly rent of $525 in 2012 and monthly rent of $575 in April 2017, the month preceding the Brabant report, was presumably based on the city's assessment that El Rovia LLC would be entitled to further rent adjustments in the five years after the base rent had been set.

heard El Rovia LLC's appeal of the City's base rent determination. At the hearing, El Rovia LLC presented testimony from Davies, one of its principals, and its appraiser, Neet. Davies testified that when considering the purchase of the Park in 2012, the Park's rents were just over $200 per month per space. Upon purchasing the Park in mid-2013, El Rovia LLC planned to raise the rents to market levels, which it considered to be in the high $600s per month. Davies stated that El Rovia LLC was not making a claim that it was not receiving a fair return; it was making a *Vega* challenge to the manner the base rent had been established.

El Rovia LLC asserted 2015 (the year Ord. No. 2860 was adopted) must serve as the base year because it exhibited market conditions immediately prior to enactment of the rent control for smaller mobilehome parks. El Rovia LLC submitted Neet's report as evidence that as of September 10, 2015, the market value of the spaces at the Park was $665 per month per space. Neet also testified consistently with his written report.

In contrast, the City argued that the City had lawfully established 2012 as the base year by ordinance. It presented Brabant's report and testimony. Brabant reiterated his earlier stated concerns about Neet's analysis and testified consistent with his report that, as of 2012, space rental value at the Park was $525.[9] Brabant interpreted section 8.70.080, subdivision (D)(2)(d), which allows for adjustment of the base year rent when there are exceptional circumstances, as controlling El Rovia

---

[9]     Brabant explained that he used the terminology " 'space rental value' " rather than " 'fair market value' " because Ordinance No. 2860 does not use the term " 'fair market value.' "

11

LLC's application.  Under that subsection, a rent adjustment is available when a park owner's base period rents are disproportionately low in comparison to base period rents " 'of other comparable parks in the city.' "

The ALJ determined that 2012, not 2015, was the lawful base year, and the year for making base rent adjustments, based on the language of the statute (§ 8.70.080, subds. (C) & (D)(2)(d)) and the City's broad discretion to establish a base year of its choice.  The ALJ observed that the ordinance's use of 2012 as the base year was reasonable because that date preceded the imposition of the first rent controls in the City, making 2012 more likely to be reflective of general market conditions and uninfluenced by rent control legislation.  The ALJ also reasoned that choosing 2012 as the base year was reasonable given that the Park is an age-restricted park, and the only other age-restricted park in the City was one of the two large parks that were the subject of the 2013 rent control ordinance.  Therefore, gauging 2015 rents unaffected by rent control in comparable parks would be difficult as one of the most similar was already rent controlled.  The ALJ also found El Rovia LLC had made no claim that the rents resulting from the use of 2012 as the base year deprived it of a fair return.

Relying significantly on the Brabant report (the only evidence of market conditions in 2012), the ALJ concluded that El Rovia LLC was "entitled to a base year rent adjustment, as of 2012, of up to $525 per month per space . . . ."  The court found, "The value of $525 per month per space . . . is reasonable considering El Rovia's location within the range of superior and inferior comparable properties."  The ALJ further explained that El Rovia LLC's "various arguments were not persuasive that Mr.

12

Brabant failed to provide a valid opinion as to general market conditions in 2012. Mr. Neet did not offer any competing opinions concerning general market conditions in 2012. Further, without any analysis of market conditions in 2012, the proper base year, [a]ppellant failed to offer an alternative and valid value determination upon which any party can base a request for a rent increase."

**6.      Petition for Writ of Administrative Mandamus**

On May 1, 2018, El Rovia LLC filed its first amended petition for administrative mandamus pursuant to Code of Civil Procedure section 1094.5 to set aside the City's denial of El Rovia LLC's application to set a base rent of $665 and to require the City to set a "base rent" based on 2015 market conditions.

On October 9, 2018, El Rovia LLC filed its Motion for Judgment on the Petition for Administrative Mandamus. On December 12, 2018, the court denied El Rovia LLC's petition, essentially agreeing with the ALJ's analysis. On February 4, 2019, the court entered judgment denying the petition. El Rovia LLC timely appealed.

**7.      Separate Facial Challenge**

On August 1, 2017, before it filed its administrative writ petition, El Rovia LLC filed an action in the Los Angeles Superior Court entitled, *El Rovia Mobile Home Park LLC v. City of El Monte*, case No. KC069501. The complaint asserted a "facial" challenge to the City's ordinance alleging that there was no rational basis for imposing rent controls upon the smaller parks in the City. The City filed a demurrer which the trial court sustained with leave to amend. El Rovia LLC declined to amend and appealed the ensuing judgment. (*El Rovia Mobile Home*

13

*Park v. City of El Monte* (Mar. 21, 2019, B288134) [nonpub. opn.]
(*El Rovia I*).)

Our colleagues in the Second Appellate District, Division
One, affirmed the dismissal of all causes of action, save one –
which was based on El Rovia LLC's claim that the City had failed
to demonstrate the "constitutional fact" of a housing shortage to
justify rent control under *Birkenfeld, supra*, 17 Cal.3d at p. 129.
On August 29, 2019, following remand to the trial court, El Rovia
LLC voluntarily dismissed *El Rovia I*.

## DISCUSSION

El Rovia LLC argues that:  (1) 2015, not 2012, is the lawful
base year for the determination of base rent adjustments and
(2) the ALJ's contrary decision was not supported by substantial
evidence.  After explaining the legal landscape for El Rovia LLC's
rent adjustment application, we address each argument in turn.

## 1.     Rent Control Adjustment Principles

As mentioned above, Ordinance No. 2860 expressly states
that the base year for mobilehome rent is 2012 and presumes the
net operating income received by the park owner in 2012 was fair
and reasonable.  (§ 8.70.080, subd. (C)(1).)  Pursuant to the
ordinance, there are four authorized reasons for a rent increase,
one of which is maintenance of a fair return.  (§ 8.70.080)
Throughout the rent control adjustment application process, El
Rovia LLC repeatedly asserted it was *not* seeking a base rent
increase on any of these four grounds.

Rather, El Rovia LLC explicitly sought a " '*Vega*'
adjustment."  In *Vega, supra*, 223 Cal.App.3d at p. 1342, the
defendant city had enacted a rent control ordinance that set the
rent charged at an earlier fixed date (the base date rent) as the
starting point for fixing maximum rents.  The landlord of a nine-

14

unit property sought to adjust the base date rent because the rents on the property had been considerably suppressed since well before the base year due to "peculiar circumstances." (*Id.* at p. 1344.) The City's rent control commission refused to adjust the base rent because the landlord had not provided evidence of the amount of return generated by comparable buildings, despite recognizing the appraisal evidence submitted by the landlord demonstrated the base date rents charged were disproportionately low. (*Id.* at p. 1347.)

The *Vega* court concluded that based on constitutional concerns, "a property owner must be permitted . . . to start rent calculations with a base date rent similar to other comparable properties." (*Vega, supra*, 223 Cal.App.3d at p. 1352, citing *Birkenfeld, supra*, 17 Cal.3d at p. 129.) The court reversed and remanded the matter to the rent control commission with instructions to "set the landlord's base date rents consistent with the appraiser's evidence of rents for comparable units and then apply the [o]rdinance's maintenance of net operating income formula to establish the current maximum allowable rents." (*Vega*, at p. 1352.)[10] Our Supreme Court's holding created a two-step process: "After [1] base date rents are established which reflect general market conditions, then [2] the Commission should apply and maintain the net operating income formula of the [o]rdinance." (*Vega*, at p. 1351.)

---

[10] We observe that Ordinance No. 2860 appears to anticipate a *Vega* adjustment as it provides: "[n]othing in this chapter shall preclude the [c]ity [m]anager or hearing officer from granting an increase that is necessary in order to meet constitutional fair return requirements." (§ 8.70.080, subd. (H).)

As El Rovia LLC's brief on appeal makes clear, this case presents a claim for a *Vega* determination of the base year rent for the Park.

## 2. Standard of Review

On appeal we are tasked with reviewing the ALJ's decision, not the trial court's. "Appellate review of the factual basis behind a decision by a rent control board or agency is governed by the substantial evidence standard. . . . '[W]e consider all relevant evidence in the administrative record, beginning with the presumption that the record contains evidence to sustain [the agency's] findings of fact.' . . . '[I]n the absence of an unconstitutional and confiscatory taking, the courts [are] not authorized to interfere with the actions of the local rent boards . . . .' " (*Colony Cove Properties, LLC v. City of Carson* (2013) 220 Cal.App.4th 840, 865–866 (*Colony Cove*).) In applying the standard, we focus on the decision of the agency rather than that of the trial court and " 'answer the same key question as the trial court . . . whether the agency's findings were based on substantial evidence. [Citations.]' " (*MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 218–219 (*MHC*).)

"To the extent that the administrative decision rests on the hearing officer's interpretation or application of the Ordinance, a question of law is presented for our independent review." (*MHC, supra*, 106 Cal.App.4th at p. 219.) "However, a rent control board's interpretation of a rent control ordinance and its implementing guidelines is entitled to considerable deference. [Citations.] 'The burden is on the appellant to prove the board's decision is neither reasonable nor lawful.' " (*Colony Cove, supra*, 220 Cal.App.4th at p. 866.)

16

### 3. We Find No Error in the City's Selection of 2012 as the Base Year

El Rovia LLC first contends that the ALJ erred in using 2012 rather than 2015 as the base year rent when ruling on its request for an adjustment. El Rovia LLC reasons the base rent year should be 2015 because the ordinance regulating the smaller parks was enacted in 2015 and froze rents in that year. We disagree.

Here, El Rovia LLC sought to adjust the "base rent." The City does not quarrel with El Rovia LLC's right to seek a base rent adjustment. The parties dispute the starting point. The ordinance expressly identifies 2012 as the base year for initial rent determinations, and it rebuttably presumes that the net operating income received by the park owner in 2012 was fair and reasonable. (§ 8.70.080, subd. (C)(1).) Nowhere in the ordinance is 2015 identified as the base year for assessing increases in rent. We are not asked to engage in statutory interpretation to give meaning to an ambiguous ordinance. The base rent year is clearly established. El Rovia LLC's argument is that, as a matter of constitutional law, the City was required to establish 2015 as the base year.

We start our analysis with an established principal: The City is entitled broad discretion in selecting the base year under rent control. "Mobilehome rent control ordinances are accorded particular deference as rational curative measures to counteract the effects of mobilehome space shortages that produce systematically low vacancy rates and rapidly rising rents." (*Carson Harbor, Ltd. v. City of Carson Mobilehome Park Rental Review Bd.* (1999) 70 Cal.App.4th 281, 290 (*Carson Harbor*).) "It is within a city's prerogative and legislative authority 'to

17

determine what rent control scheme it will adopt' and 'to decide what base year to employ in its rent control ordinance.' " (*Colony Cove, supra,* 220 Cal.App.4th at p. 874, quoting *MHC, supra,* 106 Cal.App.4th at p. 223 & fn. 4.)

"Fair return is the constitutional measuring stick by which every rent control board decision is evaluated." (*Carson Harbor, supra*, 70 Cal.App.4th at p. 288.)[11] This standard evaluates whether the rent control ordinance results in an impermissible confiscatory taking. "While a fair return is constitutionally required, 'the state and federal Constitutions do not mandate a particular administrative formula for measuring fair return . . . .' [Citations.] Thus, 'rent control laws incorporate any of a variety of formulas for calculating rent ceilings.' [Citations.] 'Under broad constitutional tolerance, California cities may enact various forms of residential rent control measures to satisfy the just, fair and reasonable rent standard. [Citation.] Public administrative bodies, charged with implementing and enforcing rent control measures, are not obliged by either state or federal constitutional requirements to employ any prescribed formula or method to fix rents." (*MHC, supra*, 106 Cal.App.4th at pp. 220– 221*, Carson Harbor, supra*, 70 Cal.App.4th at p. 290 ["the actual method utilized to regulate rents is immaterial so long as the result achieved is constitutionally acceptable"].)

---

[11] "A 'just, fair and reasonable' return is characterized as sufficiently high to encourage and reward efficient management, discourage the flight of capital, maintain adequate services, and enable operators to maintain and support their credit status. However, the amount of return should not defeat the purpose of rent control to prevent excessive rents. [Citation.]" (*Carson Harbor, supra*, 70 Cal.App.4th at pp. 288–289.)

Here, the City's selection of 2012 as the base year was reasonable, constitutional, and factually supported by the record. Contrary to El Rovia LLC's assertions, rent control ordinances typically use "the rent charged on a fixed prior date 'as a starting point for the fixing of maximum rents on the theory that it approximates the rent that would be paid in an open market without the upward pressures that the imposition of rent control is intended to counteract.' " (*Vega, supra*, 223 Cal.App.3d at p. 1349.)

As the ALJ found, 2012 preceded the enactment of any of the three rent control ordinances in the City, the first of which was limited to the two larger parks. Thus, "[i]t is sensible to now use 2012 as a base year for all parks in the City, because that year predates when any park in the City was subject to rent control and when the general market could be expected to react." By using 2012 as the base year, the City was able to consider all the mobilehome parks in the City, none of which were under rent control at the time. This was critical to the City's assessment of comparable properties (all mobilehome parks) in its determination of whether "exceptional circumstances" existed to depart from the actual rent charged in the base year of 2012. (§ 8.70.080, subd. (D)(2) ["Exceptional Circumstances in the Base Year. The gross income during the base year was disproportionately low due to exceptional circumstances"].) Because the City was in a rent control-free environment in 2012, the City's use of 2012 as the base year was reasonable. Although not part of our standard of review, we observe this is what the ALJ found and what the trial court found.

We reject El Rovia LLC's argument that under *Vega* or any other rule of law, the City was required to select 2015 as the base

19

year. To the extent El Rovia LLC argues that using 2012 as a base year is unfair, El Rovia LLC has failed to produce any evidence that this is the case. El Rovia LLC also failed to show that, as a matter of law, 2015 is the base year. Such an argument is contrary to the language Ordinance No. 2860.

We find telling that, on repeated occasions in its appellate briefs, before the trial court and before the ALJ, El Rovia LLC made no claim that the rent resulting from the application of the 2012 base year deprives it of a fair return. Based on the foregoing, we see no *Vega* concerns about the City's selection of 2012 as the base year and conclude there was no error in using comparable 2012 rental rates to determine base year rent.

4.    **Substantial Evidence Supports the Base Rent Determination of $525**

The City determined that the rents actually charged Park tenants in 2012 did not provide a fair rate of return – they were unreasonably low due to exceptional circumstances. This required the City to adjust upwards the base year rent under section 8.70.080, subdivision (D). El Rovia LLC argues that insufficient evidence supports the City's determination that $525 was the lawful, adjusted base rent. It contends, instead, the only substantial evidence on which the ALJ should have relied was its expert's appraisal, who found $665 as the adjusted base rent. To borrow a phrase often used in politics, this argument is a non-starter. Neither El Rovia LLC's expert, Neet, or any El Rovia witness presented evidence of what would be a reasonable base rent adjustment using the ordinance's 2012 base year. Neet's appraisal was based solely on 2015 rents. He was silent on the 2012 rents. For this reason, El Rovia LLC's substantial evidence argument on the base year adjusted rent is essentially an attack

20

on the City's selection of 2012 as the base year, an argument we have rejected.

Substantial evidence does support the City's finding that $525 was the reasonable adjusted base rent for 2012. We agree with the ALJ's conclusion that Brabant's appraisal report and his testimony provide sufficient support for 2012 adjusted base rent of $525. Brabant was well qualified as an expert on mobilehome park rent control and performed extensive analysis to reach his conclusion. In addition to two additional comparable mobilehome properties which Brabant selected, he also considered four of the six mobilehome properties that Neet used, only excluding the two properties located outside the City. Brabant's report and testimony explained why he pegged the comparable properties as either more or less valuable than the Park and why a base year rent of $525 for the Park was most appropriate on the spectrum of mobilehome rents in the City.

Without citation to the record, El Rovia LLC argues that the "[e]ngagement [p]arameters of the City" tainted Brabant's report. Specifically, El Rovia LLC asserts: "Mr. Brabant refused to incorporate the rates of other close parks outside of El Monte even though many were far closer than other mobilehome parks in the City and all in the same San Gabriel market area." At trial, Brabant testified that he did not use properties outside of the City to determine the base year rent because inclusion of such properties was "contrary to the ordinance," which solely addressed mobilehome park rents within the City. The City was entitled to accept Brabant's evidence and reject Neet's. At most, El Rovia LLC's argument is an invitation that we reweigh the evidence. We may not do that. (See *Donley v. Davi* (2009) 180 Cal.App.4th 447, 456 ["We ' "do not reweigh the evidence; we

21

indulge all presumptions and resolve all conflicts in favor of the [agency's] decision.  Its findings come before us 'with a strong presumption as to their correctness and regularity.' [Citation.]" ' "].)

## *DISPOSITION*

We affirm the trial court's judgment denying appellant El Rovia Mobile Home Park, LLC's first amended petition for administrative mandamus.  Defendant and respondent City of El Monte is awarded its costs on appeal.


RUBIN, P. J.

WE CONCUR:


MOOR, J.


KIM, J.