Filed 8/13/25 (unmodified opinion and pub order attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| ANAHEIM MOBILE ESTATES, LLC, | |
|---|---|
| Plaintiff and Respondent, | G063421 |
| v. | (Super. Ct. No. 30-2022-01272652) |
| STATE OF CALIFORNIA, | O R D E R |
| Defendant and Appellant. | |

The order filed herein on August 13, 2025, is hereby MODIFIED as follows:

In the first sentence the word "Respondent" is changed to "Appellant." So that the sentence reads: "Appellant has requested that our opinion, filed July 17, 2025, be certified for publication."


DELANEY, J.

WE CONCUR:


MOORE, ACTING P. J.


GOODING, J.

Filed 7/17/25; Certified for Publication 8/13/25 (order attached) (unmodified opinion)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ANAHEIM MOBILE ESTATES, LLC,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>STATE OF CALIFORNIA,<br><br>  Defendant and Appellant. | G063421<br><br>(Super. Ct. No. 30-2022-01272652)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Richard Y. Lee, Judge. Reversed.

Rob Bonta, Attorney General, Thomas S. Patterson, Senior Assistant Attorney General, Mark R. Beckington and Robert L. Meyerhoff, Deputy Attorneys General, for Defendant and Appellant.

Rudderow Law Group, Daniel T. Rudderow and Chris C. Chapman, for Plaintiff and Respondent.

Western Manufactured Housing Communities Association, as amicus curiae in support of Plaintiff and Respondent.

\* \* \*

Civil Code section 798.30.5[1] generally limits the amount that certain mobilehome park owners may increase the gross rental rate for a tenancy annually. After section 798.30.5 became effective, Anaheim Mobile Estates, LLC ("AME") filed an unverified complaint seeking a judicial determination that section 798.30.5 is facially unconstitutional. The State of California ("State") filed an answer generally denying the allegations of the complaint. AME subsequently filed a motion for judgment on the pleadings, which the trial court granted. The State appealed.

The State argues the trial court erred in granting the motion for judgment on the pleadings because its answer denied all factual allegations, including the allegations relating to AME's standing to sue. The State further argues AME has not shown the statute is facially unconstitutional. As discussed below, we agree on both points. Accordingly, we reverse.

STATEMENT OF THE CASE

On February 6, 2023, AME filed an unverified First Amended Complaint (FAC), seeking a declaratory judgment that section 798.30.5 is unconstitutional. Section 798.30.5, effective January 1, 2022 and operative until January 1, 2030, generally provides that a mobilehome park operator, who owns a mobilehome park "located within and governed by the

---

[1] All further section references are to the Civil Code, unless otherwise stated.

2

jurisdictions of two or more incorporated cities" (§ 798.30.5, subds. (h)(4) & (j)), may not "increase the gross rental rate for a tenancy . . . more than 3 percent plus the percentage change in the cost of living, or 5 percent, whichever is lower, of the lowest gross rental rate charged for a tenancy at any time during the 12 months prior to the effective date of the increase." (§ 798.30.5, subd. (a)(1).) It further provides that "[i]f the same homeowner maintains a tenancy over any 12-month period, the gross rental rate for the tenancy shall not be increased more than two increments over that 12-month period." (§ 798.30.5, subd. (a)(2).)

The FAC alleged that AME "owns and operates a mobilehome park located within and governed by the jurisdictions of the two (2) incorporated cities of Anaheim and Stanton in the County of Orange." It raised a "facial challenge" to section 798.30.5, arguing the lack of a "Fair Return Rent Adjustment Mechanism" renders the statute unconstitutional. As AME explained, a "Fair Return Rent Adjustment Mechanism" is a procedure that provides the property owner with "the opportunity to demonstrate to the regulatory agency or its designee that the [rent adjustment mechanism in the statute] is not providing a fair return to the property owner, such as, where operating expenses have increased significantly, eroding the park owner's return on its investment. . . . Such a Fair Return Rent Adjustment Mechanism typically provides for an administrative process by a local review board or third-party arbitrator, the result of which can be challenged in court with a Writ of Mandate." The FAC asserted "[t]he California Supreme Court has made it clear in no less than four cases since 1976, that any rent control law in the state of California must include a procedural mechanism for a property owner to apply for a rent adjustment beyond what is permitted in the rent control law to avoid a

3

<u>confiscatory result</u> to the property owner."[2] The FAC asserted section 798.30.5, as presently constituted, violates AME's "civil and constitutional rights, including due process, equal protection and uncompensated taking of private property" under Article I, Sections 7 and 19 of the California Constitution.

On March 7, the State filed an answer, generally denying all the allegations in the FAC. The answer also raised the affirmative defense that the FAC failed to state facts sufficient to constitute a cause of action.

On June 7, AME filed a motion for judgment on the pleadings. In its motion, AME argued section 798.30.5 "is unconstitutional because it provides ***no procedural mechanism or opportunity*** for an affected property owner, such as [AME], to petition the State of California for a rent increase in order to allow owner to achieve a 'fair return' -something constitutionally guaranteed by the U.S. and California Constitutions. As a result of this defective omission, this statute is unconstitutional on its face."

The State opposed the motion for judgment on the pleadings. It argued the motion failed for two independent reasons. First, because it filed "a valid answer placing all material allegations at issue," "the pleadings do not provide a basis to enter judgment for [AME]." Second, the challenged statute does not constitute "a taking or a violation of due process." Specifically, the State argued AME "does not adequately allege that [the challenged statute] fails to provide for a 'fair return,' much less that the

---

[2] The four cases are: *Birkenfeld v. City of Berkeley* (1976) 17 Cal.3d 129 (*Birkenfeld*), *Calfarm Ins. Co. v. Deukmejian* (1989) 48 Cal.3d 805 (*Calfarm), Kavanau v. Santa Monica Rent Control Bd.* (1997) 16 Cal.4th 761 (*Kavanau*), and *Galland v. City of Clovis* (2001) 24 Cal.4th 1003 (*Galland*). These cases are discussed below.

4

statute fails to do so in all of its applications (as is required for a facial challenge)" and "its theory that a rent control law must provide for a 'fair return' hearing to be constitutional is not recognized under California law." Finally, the State argued that if the trial court grants the motion, it should grant the State leave to amend its answer.

In reply, AME argued the State's "general denial of all factual allegations is irrelevant" because "[t]he question [before the trial court] is purely legal, not factual in nature." AME also argued the fact that section 798.30.5 provides no mechanism for a fair return hearing or other type of procedure makes it "a facially invalid regulatory taking of [AME's] property." Finally, AME argued the State should not be granted leave to amend because any amendment would be futile since the challenged statute is facially defective based on a purely legal issue.

Following arguments, the trial court granted the motion for judgment on the pleadings without leave to amend. Although the trial court rejected AME's argument that the statute violates the takings clause of the California Constitution, it granted the motion on the ground that "the complete absence of any procedural mechanism or process to seek an exception to the 5[ percent] maximum ceiling [for gross rental rate] violates due process and renders the statute unconstitutional." The court also determined the State's "general denial of the material allegations of the complaint is of no consequence as the plain language of section 798.30.5 is undisputed." Finally, the court noted that at the motion hearing, the State "requested leave to allege two additional affirmative defenses: that Plaintiff lacks standing, and that the 5 [percent] ceiling provides a fair return." The court determined the requested amendments would not change the result, and denied leave to amend.

5

Judgment in favor of AME and against the State was entered December 4, 2023, and stayed pursuant to the State's request. The State then timely noticed an appeal from the judgment.

DISCUSSION

A plaintiff may move for a motion for judgment on the pleadings on the ground that "the complaint states facts sufficient to constitute a cause or causes of action against the defendant and the answer does not state facts sufficient to constitute a defense to the complaint." (Code Civ. Proc., § 438(c)(1)(A).) Such motions are "the equivalent of a demurrer to an answer, and [on review] . . . the appellate court will assume the truth of all facts properly pleaded in the answer and will disregard the controverted allegations of the complaint." (*Engine Manufacturers Assn. v. State Air Resources Bd.* (2014) 231 Cal.App.4th 1022, 1034 (*Engine Manufacturers*).) Thus, AME must show (1) it has stated a cause of action and (2) the State's answer does not suggest a defense to the cause of action. AME fails on both elements.

I.

LACK OF FAIR RETURN ADJUSTMENT MECHANISM

As to the stated cause of action, AME alleged a facial challenge to the constitutionality of section 798.30.5 based on the undisputed statutory language. The California Supreme Court has articulated two tests for evaluating facial challenges. (*Guardianship of Ann S.* (2009) 45 Cal.4th 1110, 1126.) Under the "strictest test," the statute must be upheld unless the party establishes the statute "'inevitably pose[s] a present total and fatal conflict with applicable constitutional prohibitions.'" (*Ibid.*) Under the "more lenient standard sometimes applied," a party must establish the statute conflicts with the constitutional provision "'in the *generality* or *great majority* of

6

cases.'" (*Ibid.*) However, "'"[a]ll presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity. Statutes must be upheld unless their unconstitutionality clearly, positively, and unmistakably appears."'" (*In re Ricky H.* (1970) 2 Cal.3d 513, 519.)

AME asserts the California Supreme Court has held in at least four published cases that a price control statute must have an individualized rate adjustment mechanism to be constitutional. AME misinterprets the relevant legal precedents. The mere fact that no rent control law has been upheld where there was no fair return adjustment mechanism in the law does not mean that a fair return adjustment mechanism is required for a rent control law to pass constitutional muster. Rather, such procedural mechanism may be required to save an otherwise unconstitutional rent control law. We discuss in order the four cases cited by AME.

In *Birkenfeld, supra,* 17 Cal.3d 129, the California Supreme Court examined an amendment to a city charter imposing rent control on most rental units, which took effect on August 2, 1972. (*Id.* at p. 137.) The amendment rolled back rents to the "lowest level in effect on or after August 15, 1971," and prohibits any upward rent adjustment until a five-person popularly-elected rent control board grants the landlord's petition for rent adjustment. (*Id.* at p. 138.) The high court first held that rent control provisions are "within the police power [of a governmental entity] if they are reasonably calculated to eliminate excessive rents and at the same time provide landlords with a just and reasonable return on their property. However, if it is apparent from the face of the provisions that their effect will necessarily be to lower rents more than could reasonably be considered to be required for the [statute]'s stated purpose, they are unconstitutionally

7

confiscatory." (*Id*. at p. 165.) "[W]hether a regulation of prices is reasonable or confiscatory depends ultimately on the result reached. [Citation.] However, such a regulation may be invalid on its face when its terms will not permit those who administer it to avoid confiscatory results in its application to the complaining parties." (*Ibid*.)

The high court then examined the charter's rental adjustment provisions. It concluded "the charter amendment drastically and unnecessarily restricts the rent control board's power to adjust rents, thereby making inevitable the arbitrary imposition of unreasonably low rent ceilings. It is clear that if, the base rent for all controlled units were to remain as the maximum rent for an indefinite period, many or most rent ceilings would be or become confiscatory. *For such rent ceilings of indefinite duration an adjustment mechanism is constitutionally necessary* to provide for changes in circumstances and also provide for the previously mentioned situations in which the base rent cannot reasonably be deemed to reflect general market conditions." (*Birkenfeld, supra*, 17 Cal.3d at p. 169, italics added.) Thus, an adjustment mechanism is constitutionally necessary *only* where the rent ceiling would be or becomes confiscatory.[3]

_____

[3] AME's reliance on *Apartment Assn. of Greater L.A. v. Santa Monica Rent Control Bd.* (1994) 24 Cal.App.4th 1730 is misplaced. There, the appellate court stated: "Rent control regulations can have a confiscatory effect if no rent adjustment mechanism is provided, and a regulation may be invalid on its face when its terms will not permit those who administer it to avoid confiscatory results in its application to the complaining parties. (*Birkenfeld, supr*a, 17 Cal.3d at pp. 165, 169.)" (*Id.,* at p. 1739.) The language merely summarizes the holding of *Birkenfeld*, and does not support AME's claim that a rent control ordinance is impermissibly confiscatory absent a rent adjustment mechanism.

In *Calfarm, supra*, 48 Cal.3d 805, the high court examined Proposition 103, which was enacted November 8, 1988, and, among other things, (1) immediately reduced insurance rates to at least 20 percent less than those in effect on November 8, 1987; (2) required the Insurance Commissioner to approve any rate increase; and (3) limited the Insurance Commissioner's discretion to approve a rate increase in the immediate one-year period to cases where an insurer is substantially threatened with insolvency. (*Calfarm, supra*, 48 Cal.3d at p. 813.) In evaluating the price control scheme, the high court stated: "The face of a statute rarely reveals whether the rates it specifies are *confiscatory* or arbitrary, but necessarily discloses its provisions, *if any*, for rate adjustment. Recognizing that virtually any law which sets prices may prove *confiscatory* in practice, courts have carefully scrutinized such provisions to ensure that the sellers will have an adequate remedy for relief from *confiscatory* rates." (*Id.* at pp. 816–817, fns. omitted and italics added.) The high court then noted "[t]he risk that the rate set by the statute is confiscatory as to some insurers from its inception [due to mandating a reduction of at least 20 percent less than former rates] is high enough to require an adequate method for obtaining individualized relief." (*Id.* at p. 820.) It examined the rate adjustment mechanism and determined the limitation on the Insurance Commissioner's discretion was invalid, although severable. (*Id.* at p. 821.) Thus, an adjustment mechanism is not necessary in all cases and courts scrutinize rate adjustment provisions in a price control law to remedy potentially confiscatory rates.

In *Kavanau, supra*, 16 Cal.4th 761, the high court examined the rent control law of the City of Santa Monica. In discussing a due process challenge to the law, the court stated that rent control laws do not violate substantive due process "so long as the law does not deprive investors a 'fair

9

return' and thereby become 'confiscatory.'" (*Id.* at p. 771.) Stated differently, "when considering whether a price regulation violates due process, a 'court must determine whether the [regulation] may reasonably be expected to maintain financial integrity, attract necessary capital, and fairly compensate investors for the risks they have assumed, and yet provide appropriate protection for the relevant public interests, both existing and foreseeable." (*Id.* at p. 772.) As a result of these due process considerations, the high court noted "certain characteristics that would weigh in favor of a finding of constitutionality." (*Ibid.*) For example, the lack of an indefinite freeze on the dollar amount of profits would support a finding of constitutionality. "In addition, when a rent control law establishes a 'base rent' by reference to rents on a specified date, the law should permit adjustments of that base rent for those rental units that had artificially low rents at that time. [Citation.] Similarly, the law should permit individualized rent adjustments in appropriate cases even if base rent was not artificially low [citation], and the procedural mechanism by which landlords may obtain any of these adjustments must not be prohibitively burdensome." (*Ibid.*) Thus, an individualized rental adjustment process would *support* a finding of constitutionality in cases where a rent control law sets base rents artificially low or in "appropriate cases." But an individualized rental adjustment process is not a mandatory component of a constitutional rent control law.

In *Galland*, *supra*, 24 Cal.4th 1003, the high court examined a mobilehome rent control ordinance. In discussing when a price regulation becomes confiscatory due to a "delay in the upward adjustment of rents, or 'regulatory lag,'" the court stated that "a rent control regime that permits landlords to challenge confiscatory regulations in state court via a writ of mandate, and which permits the timely adjustment of future rents to

10

compensate for any regulatory lags that may have occurred, is one that passes constitutional muster." (*Id.* at p. 1023.) The court also discussed its holding in *Birkenfeld, supra*, 17 Cal.3d 129, and stated, "There, we held that one of the necessary components of a constitutional rent control ordinance is that it provides a mechanism to adjust rents to reflect changed conditions 'without a substantially greater incidence and degree of delay than is practically necessary.'" (*Galland, supra*, 24 Cal.4th at p. 1039.) As we noted above however, *Birkenfeld* involved a rent control law that would be confiscatory or lead to confiscatory results, and the adjustment mechanism was necessary to remedy that constitutional infirmity.

In sum, the relevant legal precedents hold that a procedural mechanism may be necessary to remedy a constitutionally infirm rent control law, but is not a necessary component of an otherwise constitutional rent control law. AME has not shown that section 798.30.5 is confiscatory in all cases or in the majority of cases. Section 798.30.5 does not indefinitely freeze the gross rental rate. Rather, it is operative for an eight-year period, from January 1, 2022 until January 1, 2030, and it permits annual increases of 3 percent plus the cost of living or 5 percent, whichever is lower. AME has alleged no facts and there is no judicially noticed evidence suggesting this rent control scheme is or would become confiscatory in all or a majority of cases.[4] Without establishing the confiscatory nature of the rent control scheme set forth in section 798.30.5, AME has not shown it has stated a viable claim that the lack of a fair return adjustment mechanism in section

---

[4] Even if AME had alleged facts suggesting section 798.30.5 would lead to confiscatory results, as discussed below, the State's general denial controverted those material allegations.

11

798.30.5, by itself, renders the statute facially unconstitutional.[5]

## II.

### LACK OF STANDING TO SUE

As a separate and independent basis for reversing the trial court's order granting the motion for judgment on the pleadings, we conclude the State's general denial placed AME's standing to sue at issue, which warrants denial of the motion. A plaintiff's motion for judgment on pleadings "'must be denied if the defendant's pleadings raise a material issue or set up affirmative matter constituting a defense.' [Citation.] Stated differently, '[w]here the answer, fairly construed, suggests that the defendant may have a good defense, a motion for judgment on the pleadings should not be granted.' [Citation.]" (*Engine Manufacturers*, *supra*, 231 Cal.App.4th at p. 1034.)

Here, the State's general denial "'put[s] in issue the material allegations of the complaint.'" (*Advantec Group, Inc. v. Edwin's Plumbing Co.*, *Inc.* (2007) 153 Cal.App.4th 621, 627.) "A material allegation in a pleading is one essential to the claim or defense and which could not be stricken from the pleading without leaving it insufficient as to that claim or defense." (Code Civ. Proc., § 431.10, subd. (a).) Lack of standing to sue is essential to a claim because it goes to the "existence of a cause of action." (*Parker v. Bowron* (1953) 40 Cal.2d 344, 351.) "Where the complaint states a cause of action in someone, but not in the plaintiff, a general demurrer for failure to state a

---

[5] We appreciate the brief of amicus curiae Western Manufactured Housing Communities Association summarizing the history of certain price control laws in the United States. Amicus curiae, however, provides no California authority for its assertion that an administrative remedy is required to ensure a rent control law is not confiscatory, other than the cases we discussed above.

12

cause of action will be sustained. [Citation.] This objection is not waived by failure to raise it by demurrer or answer, and may be raised at any point in the proceedings." (*Ibid.*; see also *Hudis v. Crawford* (2005) 125 Cal.App.4th 1586, 1592 ["A 'lack of standing' is a jurisdictional defect"].)

*People ex rel. Becerra v. Superior Court* (2018) 29 Cal.App.5th 486, is instructive. There, certain parties challenged the constitutionality of a California statute. "The State responded with a general denial of [all] allegations of the complaint." (*Id.* at p. 495.) Subsequently, the trial court granted the plaintiffs' motion for judgment on the pleadings, and after review, the appellate court granted the State's petition for a writ of mandate ordering the trial court to vacate its order and judgment. (*Id.* at p. 505.) The appellate court explained: "Here, the State denied all of [the plaintiffs'] allegations, including as to standing. The trial court had to accept this denial as true. This alone should have precluded judgment on the pleadings." (*Id.,* at p. 499.) Similarly, here, the State's general denial put in issue AME's standing to sue, which precludes judgment on the pleadings.

DISPOSITION

The judgment is reversed. The State is entitled to its costs on appeal.

DELANEY, J.

WE CONCUR:


MOORE, ACTING P. J.


GOODING, J.

13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ANAHEIM MOBILE ESTATES, LLC,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>STATE OF CALIFORNIA,<br><br>Defendant and Appellant. | G063421<br><br>(Super. Ct. No. 30-2022-01272652)<br><br>O R D E R |

Respondent has requested that our opinion, filed July 17, 2025, be certified for publication. It appears that the opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED.

The opinion is ordered published in the Official Reports.


DELANEY, J.

WE CONCUR:


MOORE, ACTING P.J.


GOODING, J.